A. H. W. GRAEFE, Appellant, v. ST. LOUIS TRANSIT COMPANY and UNITED RAILWAYS COMPANY.

Division Two, December 14, 1909.

1. MOTION FOR NEW TRIAL: Appeal: Other Grounds. The Supreme Court is not confined to the grounds assigned by the trial court for granting a new trial. If the order can be sustained on any of the grounds assigned in the motion it will be upheld.

2. DEMURRER: Waiver. Where the court refused to sustain a demurrer offered to the evidence at the close of plaintiff's case, the defendant by thereafter putting in testimony does not waive its right to have a demurrer considered offered at the close of the whole case.

3. LESSOR: Lessee's Torts: United Railways Company. The United Railways Company, being the lessor of its railway system to the Transit Company, is not, under the lease, set out in Moorshead v. United Railways Co., 203 Mo. 121, liable for the torts of the lessee in operating a street car.

4. ————: ————: ————: Assent of City. Where plaintiff offered the lease in evidence, the lessor, in order to evade liability for the lessee's torts, is not required to make it appear that it complied with the Constitution by obtaining the assent of the city to the lease of the street railways and that it accepted the provisions of the legislative act of 1899 by filing a resolution of its board of directors with the Secretary of State. In the absence of proof, the presumption is that both companies complied with the constitutional and statutory requirements.

5. NEGLIGENCE: Instruction: Based on Conjecture. An instruction permitting plaintiff to recover upon mere conjecture should not be given. Where plaintiff in attempting to board a moving car lost his balance and held to the handhold with one hand and was dragged while the car ran thirty-five to forty-five feet before being stopped, an instruction should not be given authorizing a recovery if the motorman, after he discovered plaintiff's peril, omitted to exercise proper diligence to stop the car, and the injury was inflicted after said discovery, there being no evidence of when he discovered plaintiff's perilous position; for, under the circumstances, it was impossible for the jury to determine, except by mere conjecture or guess, just when the negligence arose, or whether there was any negli-

gence at all, or when plaintiff received his injuries, whether within the distance reasonably required to stop the car by the exercise of ordinary care, or whether after the negligence arose of permitting the car to run beyond such reasonable distance. if the plaintiff attempted to board the moving car after being warned by the motorman not to do so, as the instruction assumes, and said car was stopped within thirty-five to forty-five feet, and could not have been by the exercise of ordinary care stopped within a less distance, the defendant would not be liable for plaintiff's injuries received while being dragged that distance, but would be liable only for injuries thereafter received.

6. ————: ————: **Recovery on Defendant's Evidence.**    A plaintiff will not be permitted to repudiate his own allegations and evidence, and recover on defendant's evidence which, if true, disproves his own case.    Nor should an instruction be given authorizing a recovery on a theory antagonistic to an instruction based on plaintiff's cause of action as stated in his petition and his proof in support thereof.

7. ————: **Concurrent: Contributed.**    The negligent act of defendant cannot be connected with plaintiff's negligence as a contributing cause of the injury.    Concurring or co-operating negligence has reference to joint or several negligent acts by persons other than the injured party.    In this case, either defendant's negligence in not stopping the car after plaintiff was in a perilous position was the sole and proximate cause of his injury, or its failure to stop the car was not negligence at all. It cannot be held that defendant's negligence in failing to exercise ordinary care to stop the car after it discovered plaintiff's peril contributed with his own negligence in attempting to board the moving car after he had been warned not to do so, to cause the further injury.

8. ————: **Elements of Damage.**    An instruction which directs the jury to assess compensation "on account of such injury or injuries as you find from the evidence defendant is liable for under the other instructions of the court" should not be given, unless the other instructions point out the injuries for which defendant is liable.

9. ————: ————: **Nursing: No Evidence of Value.**    Where there is no evidence of the time plaintiff was nursed by trained nurses, or the value of their services, or who employed them, or what they were promised or paid, the instruction should not include compensation for nurses.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney, Judge.*

AFFIRMED.

*R. F. Ralph, Geo. W. Wolff* and *Barclay & Fauntleroy* for appellant.

(1)   There was no error in the 6th instruction given for the plaintiff.   Davenport v. City, 108 Mo. 478; Railroad v. Smith, 226 Ill. 178, 80 N. E. 716; McKeon v. Railroad, 43 Mo. 405; Matthews v. Elevator Co., 59 Mo. 494.   (2)   The plaintiff's 3d and 5th instructions stated injuries for which defendants were liable if the jury found the facts as therein recited. It is entirely proper when injuries have been sustained by a plaintiff for some of which defendant in certain aspects of the facts may be liable and for others not liable, to state the law for the recovery of damages in terms such as appear in the plaintiff's 6th instruction in this case.   Davenport v. City, 108 Mo. 478; Stavinow v. Ins. Co., 43 Mo. App. 513; Brown v. Railroad, 104 Mo. App. 696; Railroad v. Parker, 56 S. E. (Ga.) 618; Donk Co. v. Thil, 228 Ill. 233, 81 N. E. 857; Gibler v. Assn., 101 S. W. 40; Bailey v. Fixture Co., 54 Mo. App. 50; Railroad v. Zink, 229 Ill. 180, 82 N. E. 283.   (3)   On the merits of the cause of action, the instructions as to liability for the sudden start of the car (in the circumstances described in the 1st instruction) we regard as beyond danger of any attack.   Jennings v. Railroad, 99 Mo. 348; Maguire v. Railroad, 103 Mo. App. 459; Dreyfus v. Railroad, 102 S. W. 53.   (4)   The 3d instruction for plaintiff is fully supported by the evidence.   The imputation of error advanced by respondent as to plaintiff's 3d instruction is founded on the assumption that there was no evidence to show that plaintiff's injuries (or any of them) were caused by his being dragged after the motorman could have stopped the car by the exercise of reasonable care.   Plaintiff was unnecessarily dragged twenty or twenty-five feet, according to the facts in evidence. This phase of the case is presented by the 3d instruction for plaintiff

which is founded on a trite and familiar precept of our American and English law, namely: that where a negligent act contributes directly to produce an injury, the party responsible for that act is "liable for the whole damage." Shearman & Redf., Negligence., sec. 31, quoted with approval in Benjamin v. Railroad, 133 Mo. 291. See, also, Holmes v. Railroad, 207 Mo. 149. If the negligent and unnecessary dragging of plaintiff "directly contributed to cause the injuries" to plaintiff as the jury found under the third instruction, defendant was liable for all the damage ensuing therefrom. This rule is nowhere more positively announced and declared than by this court in Vogelgesang v. City, 139 Mo. 137. If plaintiff's leg was injured by acts of which the negligent act of dragging him formed part, that defendant cannot successfully claim a division of responsibility; it is responsible for all the damages to which its negligence directly contributed in any part. Deschner v. Railroad, 200 Mo. 334; Bragg v. Railroad, 192 Mo. 360; Brash v. St. Louis, 161 Mo. 433; Riska v. Railroad, 180 Mo. 195; Labatt, Master & Serv., sec. 813; Harrison v. Light Co., 195 Mo. 623. The third instruction when read fully will be seen to declare that if plaintiff suffered any injury by being unnecessarily dragged in consequence of defendant's neglect the latter is liable for the consequences of that neglect. This issue is entirely apart from that of the extent of the damage thereby caused. And the rule as expressed in this charge or instruction is entirely sound. Weitzman v. Railroad, 53 N. Y. Supp. 909; Dyche v. Railroad, 79 Miss. 361; Smithwick v. Hall Co., 59 Conn. 261; Railroad v. Hill, 86 S. W. 303; Railroad v. O'Donnell, 207 Ill. 408; Railroad v. Craft, 69 Fed. 124; Rapp v. Transit Co., 190 Mo. 161. (5) The third point of attack, is again aimed at our 3d instruction. It is claimed that it permits recovery for phases of negligence not pleaded, because the petition is said to aver that plain-

tiff was a passenger and also that he was unnecessarily dragged. These "theories" are claimed by defendant to be "repugnant." The plaintiff, we reply, was not bound to prove every fact alleged; but only enough to create a cause of action. If plaintiff was a passenger (as his evidence tended to prove) he was then entitled to receive and claim a higher degree of care from defendant than he would· be entitled to demand if (as defendant claimed) he had not become a passenger. Plaintiff was entitled to submit both states of fact, and no move was even made by defendant below to suggest any election or other objection to the procedure followed by the learned trial judge on this point. Plaintiff was entitled to submit both phases of the facts, as alleged most clearly in the petition; and there was no error in so doing. Waechter v. Railroad, 113 Mo. App. 270; White v. Railroad, 202 Mo. 539; Sluder v. Railroad, 189 Mo. 107; Rapp v. Railroad, 190 Mo. 144; Hudson v. Wright, 204 Mo. 412.    (6)    The 3rd instruction is again challenged for using the word "contributed," as it occurs therein.    The decision cited by learned counsel for defendants supposably to support that contention of respondent, is the Harper case, 187 Mo. 575, which holds that unless there is a causal connection shown between negligence alleged and the injury, no recovery of damages for the injury should be sustained.    We do not deny that proposition.    We point, however, to the evidence in this case to sustain the ruling of the learned trial judge whose instructions submitted to the jury the facts showing a direct connection between the negligent dragging and the injury of plaintiff.    Newcomb v. Railroad, 182 Mo. 687; Harrison v. Light Co., 195 Mo. 623; Fledderman v. Transit Co., 113 S. W. 1143; Vogelgesang v. City, 139 Mo. 136.

*Boyle & Priest* and *T. E. Francis* for respondents.

(1) Plaintiff's instruction 6 defining the measure of damages, is erroneous because it allowed the jury to award plaintiff damages for nurse hire, when there was no evidence upon which to base it. Gibler v. Railroad, 203 Mo. 208; Cobb v. Railroad, 149 Mo. 609, 530; Gibney v. Transit Co., 204 Mo. 704; Robertson v. Railroad, 152 Mo. 382; Morris v. Railroad, 144 Mo. 500; Nelson v. Railroad, 113 Mo. App. 663; Duke v. Railroad, 99 Mo. 349; Smith v. Railroad, 108 Mo. 243. (2) Plaintiff's instruction 3 is erroneous because it permitted the jury to find for plaintiff, if they believed that after plaintiff lost his balance and fell, the "motorman failed to use ordinary care to stop the car and avoid further injury to plaintiff," when there was no evidence tending to show that plaintiff's alleged injuries, or any of them, were caused by his being dragged, after the motorman could have stopped the car. Oglesby v. Railroad, 177 Mo. 272; Warner v. Railroad, 178 Mo. 125; Masterson v. Transit Co., 204 Mo. 507. (3) Plaintiff's instruction 3 is erroneous because it permitted the jury to find for plaintiff on an alleged act of negligence not pleaded, and indeed repugnant to the assignments of negligence pleaded in the petition. (a) The petition counts on the theory that plaintiff was a passenger. (b) The instruction submitted the case to the jury on the theory that plaintiff was not a passenger but a trespasser. Schepers v. Railroad, 126 Mo. 665. (c) These respective theories are repugnant to each other. Raming v. Railroad, 157 Mo. 509; Behen v. Transit Co., 186 Mo. 430; Drolshagen v. Transit Co.. 186 Mo. 258. (d) It was error to submit the case to the jury on negligence not only not pleaded in the petition, but actually repugnant to the negligence therein pleaded. Yall v. Gillham, 187 Mo. 393; Chitty v. Railroad, 148 Mo. 63; Hesselbach v. St. Louis, 179 Mo. 505. (4) Instruction 3 given for plaintiff is er-

roneous because it permitted the jury to find for plaintiff if they believed the negligence therein defined "contributed" to cause plaintiff's injuries, instead of directing them, as it should have done that they could not find for plaintiff unless they believed the negligence was the proximate cause of the injury. Harper v. Terminal Co., 187 Mo. 575.

FOX, J.—This action was brought in the city of St. Louis against the St. Louis Transit Company to recover for personal injuries received by plaintiff while trying to board a street car. A change of venue was awarded to St. Louis county, where, by amended petition, the United Railways Company was also made a party defendant.

The plaintiff's amended petition, in so far as is necessary to the determination of this appeal, is as follows:

"On November 15, 1901, the plaintiff wishing and intending to become a passenger for hire on one of defendants' said electric cars to be carried from the intersection of Bell and Garrison avenues in said city to another point upon defendants' said line in said city of St. Louis, signalled for that purpose to the motorman upon and in charge of a south-bound car of defendants' said Easton Avenue line to stop said car on Garrison Avenue, near the southwest corner of Bell and Garrison avenues, which was then a usual place where defendants received passengers on said cars. Said signal was given by plaintiff as said car approached from the north said southwest corner of Garrison Avenue and Bell Street in ample time to permit said car to come to a full stop opposite said corner. Plaintiff was at the time standing near said car track near said corner and at a convenient distance from said car to enter the same, and was ready and willing to pay on demand the compensation required by defendants for carriage on defendants' said line; and in response to

said signal of plaintiff said car was caused to run slow-
ly by said motorman and was brought nearly to a
standstill by said motorman in order to allow plaintiff
to get on said car at or near the place where he was
standing as aforesaid; whereupon plaintiff, with the
knowledge and consent of defendants' said agent on
said car, proceeded to enter said car while the same was
going at a speed so slow that a man of ordinary care
and prudence could safely enter same; the front plat-
form of said car was at the time open for admission
of plaintiff, and he boarded said car by putting his
foot on said front platform and raising himself upon
said car by grasping the handholds thereon, using or-
dinary care in so doing, and became a passenger on said
car; but while plaintiff was in the act of entering said
car as a passenger as aforesaid it was negligently caus-
ed to move forward by said motorman with a sudden
jerk, before plaintiff had had a reasonable time to reach
a position of safety on said car, so that plaintiff by
said negligent movement of said car and said negli-
gent act of said motorman was shaken from the step
of said platform and dragged a long distance on and
along said Garrison Avenue while said car was negli-
gently caused by said motorman to continue running
and dragging said plaintiff for a long distance, not-
withstanding said motorman by the exercise of due and
reasonable care then and there could have known and
did know the plaintiff's position of peril and that he
was being dragged along said Garrison Avenue as
aforesaid, and notwithstanding said motorman, by tak-
ing due and reasonable care in the management of
said car, could have stopped said car in time to pre-
vent injury to plaintiff or such severe injuries as he
sustained; and the said motorman failed to use such
care in each and all of the particulars aforesaid.''

The charge in the petition that the car was not
equipped with reasonably safe appliances was aban-
doned and no instruction thereon asked.

The answer of defendant, United Railways Company, was a general denial. That of defendant, St. Louis Transit Company, was a general denial, with a plea that the accident was due to the negligence of plaintiff, which negligence was set out in detail.

The cause was tried by a jury on January 25th and 26th, 1904, in the circuit court of St. Louis county, and a joint judgment rendered against defendants for twenty thousand dollars. Afterward the judgment was modified by *remittitur* and reduced to fourteen thousand dollars.

Within the statutory time after verdict, defendants jointly moved the court for a new trial for the following reasons:

"1. The court erred in admitting over the objection of defendants irrelevant and incompetent evidence offered by plaintiff.

"2. The court erred in refusing to admit relevant and competent evidence offered by defendants.

"3. The court erred in refusing to give on behalf of defendant, United Railways Company, the demurrer to the evidence asked by defendants at the close of plaintiff's case.

"4. The court erred in giving to the jury the instructions asked by plaintiff.

"5. The court erred in modifying instructions asked by defendants and of its motion giving said instructions as modified to the jury.

"6. The court erred in refusing to give to the jury as asked instructions asked by defendants.

"7. The verdict is against the weight of the evidence.

"8. The verdict is excessive in amount.

"9. The verdict is so contrary to the weight of the evidence and so excessive in amount that it must be the result of improper sympathy, passion or prejudice of the jury."

The above motion was sustained by the trial judge on the fourth ground, namely, "the court erred in giving to the jury the instructions asked by plaintiff."

Plaintiff, in due time, appealed from the order granting a new trial, properly preserved a record of the proceedings in the circuit court, and is now in this court insisting that the trial court erred in granting defendants a new trial and that we should reverse the action of that court and reinstate the judgment rendered on the verdict of the jury.

As the main questions to be considered arise upon the instructions it is well, in fact essential, to fully appreciate the legal propositions presented, to reproduce a number of the instructions in full. At the close of plaintiff's testimony in chief, the following instruction was asked by defendant, United Railways Company: "The court instructs the jury that there is no evidence in the case which would warrant a verdict against the United Railways Company of St. Louis and as to said company the verdict will be for defendant."

At the close of all the testimony offered, the court gave, among others, the following  instructions for plaintiff:

"1.  The court instructs the jury that if you believe from the evidence that on November 15th, 1901, about 7:15 a. m., plaintiff was standing near the southwest corner of Bell Street and Garrison Avenue in the city of St. Louis, and that said place where he was standing was the usual place where passengers were received on board the street cars bound towards points further south and east on the Easton Avenue line of cars on said avenue; and that said line of cars was then operated as a carrier of passengers for hire along said line; and that plaintiff was in full view of the motorman in charge of one of said cars of said line as it approached from the north to the place where plaintiff was standing as aforesaid; and that thereupon plain-

tiff, as said car approached, signaled, or made a sign, to said motorman for said car to stop to take plaintiff aboard as a passenger, which signal or sign was so understood by said motorman, and that thereupon said motorman, in response to said signal or sign, turned the brake of said car and caused said car to check its speed and to approach and reach the place where plaintiff stood at a rate of speed so slow as to permit a man of ordinary prudence and caution to board said car in safety from the place where plaintiff was waiting as aforesaid; and if you further find from the evidence that, from the movement of said car and from the actions of said motorman, a man of ordinary care in the position of plaintiff would have had good reason to believe that he was then and there invited by said motorman to step aboard of said car by way of the front platform on the west side of said car as it reached the place where plaintiff was standing as aforesaid, and if you further find from the evidence that the gate on that side of said front platform was then open so that passengers might enter the car there; and if you believe from the evidence that when said car while moving as aforesaid, reached the place where plaintiff stood he mounted the step leading to the said front platform of said car and that immediately thereafter, while plaintiff was on said lower step, said motorman caused said car to suddenly move forward with a sharp jerk so that plaintiff was thereby caused to lose his balance and to be dragged along the street and afterwards to fall thereon and be injured; and if you further find from the evidence that, in causing said sudden movement of said car, said motorman failed to exercise that degree of care, in the operation of said car, as is defined in another instruction to be the care required of a common carrier of passengers, and that plaintiff, in getting on said car and in his other conduct in the circumstances aforesaid, exercised ordinary care such as a person of reasonable caution would have taken to

avoid danger and injury, in the same situation and circumstances as those of the plaintiff at that time, then your verdict should be for the plaintiff.

"2. The amount or degree of care required by law of a common carrier of passengers and of the said motorman in the operation of said car, as mentioned in the next preceding instruction of the court, was the highest practicable care which a capable and faithful railroad man would exercise in the same situation and circumstances as those in which said motorman was then placed; and the omission of such care would be negligence on the part of said motorman and of said defendants.

"3. The court instructs the jury that if you find from the evidence that after plaintiff put his foot on the step of the car in question he fell therefrom or was shaken off in such a way as to lose his balance, and that he was being dragged along Garrison Avenue while grasping the handhold on the car, and that the motorman of said car, after he might, by the exercise of ordinary care, have seen the dangerous position of plaintiff as aforesaid, omitted to use ordinary care to stop said car and to avoid further injury to plaintiff before the latter let go of said handhold; and if you further believe from the evidence that the failure or omission of said motorman to exercise such ordinary care directly contributed to cause the injuries (or any of them) of which plaintiff complains in this action, and that plaintiff, in attempting to get upon said car and in retaining his grasp on said handhold and in his conduct and acts until the car passed beyond him towards the south, exercised such reasonable care as a person of ordinary caution and prudence would have exercised to avoid danger and injury, in the same situation and circumstances, then your verdict should be for the plaintiff, even although you may further believe from the evidence that the motorman did not respond to any signal of plaintiff to permit him to board said car, and

even though you find from the evidence that said motorman warned plaintiff by gesture or otherwise not to get on board of said car.

"6. The court instructs the jury that if, under the evidence and the other instructions of the court, you decide to find in favor of the plaintiff, you should then assess his damages at such an amount as you believe from the evidence to be reasonable compensation for any physical or mental pain and suffering which you believe from the evidence plaintiff endured (or will endure in future) on account of such injury or injuries as you find from the evidence defendants are liable for under the other instructions of the court, and for any expense paid (or liability incurred) by plaintiff on account of necessary medical care and treatment, and for nursing of him which you believe from the evidence was rendered necessary as direct results of said injury or injuries to plaintiff, as well as a reasonable compensation for the value of any earnings which you may believe from the evidence plantiff has lost by reason of loss of time resulting to him directly on account of the said injury or injuries, and also a reasonable compensation for any permanent injury which you may find resulted to plaintiff in the shortening of one of his legs, if you believe from the evidence that said last mentioned injury to plaintiff was one of the direct consequences of the alleged acts of negligence of said defendants, as explained in the other instructions of the court."

And at the same time the court gave the following instructions for defendants.

"D1. The plaintiff in his petition charges that he received the injuries of which he complains by reason of the negligence of defendant. The acts of negligence charged in the petition are as follows:

"1. That while plaintiff was in the act of entering defendant's car, said car was negligently caused to move forward with a sudden jerk, before plaintiff had a

reasonable time to reach a place of safety on said car, by which jerk plaintiff was thrown from the car and dragged on the street and injured.

"2. That defendant's motorman in charge of said car negligently failed to stop said car at the time plaintiff was thrown therefrom, and negligently continued to move said car forward instead of stopping the same, and thereby dragged plaintiff on the street whereby plaintiff was injured or more severely injured than he otherwise would have been.

"The jury are instructed that the burden is on the plaintiff throughout the whole case to prove to your satisfaction by the greater weight of the evidence that one or more of said alleged acts of negligence was or were the proximate and efficient cause or causes of the injuries, if any, sustained by plaintiff, and unless plaintiff has so proved to the satisfaction of the jury by the greater weight of the evidence, then the verdict must be for defendant.

"D2. But even if the jury should believe that plaintiff sustained his alleged injuries, or some of them, by reason of one or more of the acts of negligence aforesaid, yet before the jury can find for plaintiff on the first alleged ground of negligence, they must further believe and find from the evidence that each and every one of the following facts are true, to-wit:

"1. That at the usual place for receiving passengers at the intersection of Bell and Garrison avenues, the plaintiff signalled the motorman to stop the car to receive him as a passenger.

"2. That in response to said signal said motorman slowed up said car to receive plaintiff as a passenger.

"3. That said car was halted or slowed up for the purpose of receiving plaintiff as a passenger to such a rate of speed that plaintiff could safely enter the same.

"4.   That plaintiff, upon the invitation of the motorman and with his knowledge and consent, attempted to enter said moving car.

"And if, upon a full consideration of all the facts and circumstances given in evidence in this case, the jury do not find that plaintiff has established by the greater weight of the evidence each and every one of these four propositions, then the jury cannot find for the plaintiff on said first alleged ground of negligence.

"D3.   If the jury believe from the evidence that the motorman of the car which it is alleged injured plaintiff, as soon as he saw, or by the exercise of ordinary care ought to have seen plaintiff attempt to board the car, if the plaintiff did attempt to board it, immediately used all the means at his command to stop the car and to avoid dragging him, and that by the use of said means said motorman did stop said car as speedily as it could be stopped, then plaintiff cannot recover on the ground that said motorman failed to stop said car, but continued to move it forward and thereby dragged plaintiff.

"D4.   If the jury find from the evidence that the plaintiff's alleged injuries were caused by his attempting to board a moving car, and that such car was moving at a rate of speed that a person of ordinary prudence would not have attempted to board the same, then the plaintiff cannot recover in this action and your verdict must be for the defendant.

"D5.   Although the jury may believe from the evidence that the signal if any made by the motorman of the car which it is claimed injured plaintiff was intended as an invitation to plaintiff to board said motorman's car, yet if the jury further believe that said car at said time and when plaintiff attempted to board it, if he did, was moving at such a rate of speed that a person of ordinary prudence would not have attempted to board said car, then if plaintiff did attempt to board said car while it was moving at such a rate of

speed, and in consequence of such attempt was thrown to the street and injured, he cannot recover in this case, and the verdict must be for the defendant, even though the motorman may have signaled him to so board said car.''

The defendants also asked the court at the close of all the testimony to instruct the jury that ''admitting all the evidence offered by plaintiff to be true, the plaintiff is not entitled to recover, and your verdict must be for defendant,'' which instruction was refused. Other instructions were asked by defendants and refused, which are not necessary, for the purposes of this action, to be set out.

In order to discuss, as well as determine, the questions presented by this appeal it is essential to state briefly so much of the evidence as will in any way aid us in the treatment of them.

Plaintiff testified in substance that on November 15, 1901, he was in the employ of Penny & Gentles; that about 7:30 on that morning he went on Garrison avenue to take a car down town to his work; that this was the Easton Avenue line and was then operated by the St. Louis Transit Company; that he stopped on a corner at a usual place to board cars going south, and as a car came going south he motioned the motorman and he put on the brake; that after putting on the brake the motorman threw up his hand (indicating); that the gate on the side of the front platform next to plaintiff was open; that the back platform was crowded and only a few people in front; ''he had slowed down and I grabbed for the handle of the car on the front platform and also on the body of the car.'' On cross-examination he says the car had slowed some. That the car was then going ''like a man walks;'' that when he got one foot on the lower step of the car there was a jar which jerked his right hand off the handle and he held on with his left hand ahold of the handle on the body of the car and was dragged a distance of fifty or

sixty feet; that he would have let loose sooner but was afraid of the rear truck and that he thought the motorman would stop; that he threw himself away from the car when he found he could hold no longer; that it was a sudden jerk or moving forward of the car occurring just as he took hold of the handles which caused his hold with the right hand to let go; that his left leg and knee were hurt by the dragging. Plaintiff then goes on to describe his injuries, the time and extent of his suffering, the doctors who treated him; then in answer to a question as to how much the physicians had charged him for their services up to the time of the trial, he answered, ''Well, I really couldn't say just exactly—say about $2500. Q. Do you include in that what you spent for medicine and drugs? A. Drugs and medicines and doctors.''

Dr. Bernays, an expert surgeon, who treated plaintiff and fully described his attack of tetanus, among other things said: ''We employed trained nurses, sometimes two and sometimes one, to keep constant watch over him. The last paper will show when the last trained nurse was dismissed.''

There was no other evidence offered concerning nurse hire or nursing, other than as above noted.

Witness McManness testified for plaintiff that on the morning of the accident, he saw plaintiff approach the car and the car came almost to a stop, and as plaintiff attempted to get on the motorman started on and a little faster than what he was going; then he noticed plaintiff hanging by his left hand and was dragged about two car lengths, but that he did not see him get on the car, was not noticing.

Plaintiff offered in evidence the lease from the United Railways Company to the St. Louis Transit Company, being the same set out and described in the case of Moorshead v. United Railways Co., 203 Mo. 121.

In reference to occurrences immediately surrounding the accident, evidence was introduced by "defendant." It will be noted that the record does not use the plural anywhere during the taking of evidence for the defense. The motorman in charge of the car at the time of the injury to plaintiff, and two passengers who were riding upon the front platform at the time, testified in substance that the motorman saw the plaintiff standing at the corner of Garrison avenue and saw him motion or indicate that he wanted to get on the car; that the car was running ten or twelve miles an hour and did not check or slow up its speed; that the car was full of passengers and was a little behind time; that the motorman, instead of slowing down or making any motion to the plaintiff to get on, motioned with his right hand for him to take another car, and stated, "Take next car;" that the plaintiff attempted to get on the front platform of the car while it was running at the usual speed or about ten or twelve miles an hour, but that he failed and hung to the railing at the side of the car; that immediately thereafter the motorman put on his brake and stopped the car as quickly as he could; that the car ran forty or fifty feet before it stopped.

This sufficiently indicates the state of the record now presented to this court for review.


## OPINION.

The record in this case, as pointed out in the statement of it, discloses that the trial court sustained the motion for new trial as interposed by the defendants, on the ground, as indicated in its order, that the court erred in the instructions given for the plaintiff. From the order made and entered by the court sustaining such motion for new trial this appeal was prosecuted by the plaintiff to this court.

This appeal presented for our consideration a number of highly important legal propositions. We will give them such attention and consideration as the importance of them suggests.

## I.

The rule is firmly established in this State that upon an appeal from an order sustaining a motion for new trial this court is not confined to the grounds upon which the trial court predicated its action in sustaining the motion, but upon the consideration of the propriety of the action of the circuit court in sustaining such motion we have the unquestioned right to take into consideration any and all of the grounds assigned by defendants in their motion for new trial. If the action of the circuit court can be sustained on any one or more of the causes designated in the motion, it follows that the action of the court should be affirmed. [Emmons v. Quade, 176 Mo. 1. c. 29; Ittner v. Hughes, 133 Mo. 679.]

## II.

Directing our attention to the propositions disclosed by the record applicable to the defendant, United Railways Company, we find that the record discloses that at the close of plaintiff's evidence the United Railways Company requested the court to give an instruction to the jury in the nature of a demurrer to the evidence, directing them to return a verdict for such defendant. This demurrer was by the trial court overruled, and a timely exception to the ruling of the court was preserved by the defendant. We have examined in detail the entire disclosures of the record in this cause and a fair and reasonable interpretation of it leads us to the conclusion that there was no evidence offered by the defendant, United Railways Company, after the overruling of the demurrer at the close of the plaintiff's case. It is made manifest from an

examination of the record that the contest, so far as
the introduction of evidence was concerned, was be-
tween the plaintiff and the St. Louis Transit Com-
pany. After the overruling of the demurrer to the evi-
dence at the close of plaintiff's case, the record re-
cites, using the singular number, that the defendant
introduced the following evidence. Then follows evi-
dence which was clearly introduced by the St. Louis
Transit Company, as applicable to the defense in this
action made by such company. After this recital in
the record there is an entire absence of the term "de-
fendants," which would apply to both of said defend-
ants, until the close of the entire case. At this point
in the record, after the evidence was all in, we find
that the "defendants," using the plural, which neces-
sarily applied to both defendants, requested the court
to give the following instruction: "Admitting all the
evidence offered by plaintiff to be true, the plaintiff is
not entitled to recover, and your verdict must be for
defendant."

It is insisted by learned counsel for appellant that
the demurrer offered to the testimony at the close of
plaintiff's case was waived, and that this state of the
record repels any review of the issue as to the separate
exemption of the United Railways Company from the
judgment on the merits, if correct as to the Transit
Company. In other words, it is contended by the ap-
pellant that in order to have the question reviewed
as to the liability of the United Railways Company,
it was essential that said company should have renewed
its demurrer at the close of all the testimony, and
that having failed to do so, the action of the court
upon the demurrer is not open for review.

We are unable to give our assent to this insist-
ence. The proposition involved in the contention of
appellant is not one of first impression in this State.
It has often been in judgment before this court and

decided adversely to the contention now made by counsel for appellant.

In Eswin v. Railway, 96 Mo. 290, this court in treating of this proposition, speaking through Judge BLACK, used this language: "The first contention of the appellant is that an instruction asked at the close of the plaintiff's evidence, to the effect that the plaintiff could not recover, should have been given. The plaintiff insists that defendant waived this request by putting in its evidence. The defendant, by putting in its evidence, after its request for such an instruction had been made and overruled, took the chances of curing any defect in the plaintiff's evidence; but did not entirely waive its right to have the ruling of the court reviewed. This court, however, in reviewing the ruling of the trial court on such a question, looks to the entire evidence in the case, no matter by whom offered, nor whether the demurrer to the evidence was interposed at the close of the plaintiff's evidence in chief, or at the close of all of the evidence. It is in this sense the same question is spoken of in Bowen v. Railroad, 95 Mo. 275, and in Guenther v. Railroad, 95 Mo. 289."

In Klockenbrink v. Railroad, 172 Mo. 678, Judge GANTT, in announcing the conclusions of this court upon the proposition now under consideration, thus stated the rule applicable to it: "Did the circuit court err in overruling the demurrer to the evidence? As the defendant did not stand on its demurrer at the close of plaintiff's evidence, this question must be answered in view of the whole evidence; that which was offered by defendant as well as plaintiff. [McPherson v. Railroad, 97 Mo. 253.] The defendant, by putting in its evidence after its request for such an instruction had been made and overruled, took the chance of curing any defect in the plaintiff's evidence, but did not wholly waive its right to have the ruling of the court reviewed, but this court will look to the whole evidence,

no matter by whom offered.   This is the settled prac-
tice in this State.   [Eswin v. Railroad, 96 Mo. 294;
Jennings v. Railroad, 112 Mo. 268.]''

Our attention is directed by counsel for appellant
to the case of Frye v. Railroad, 200 Mo. 381, as an-
nouncing a rule applicable to this subject in harmony
with the views now urged by counsel for appellant.
It is sufficient to say of that case that we have carefully
analyzed it and in our opinion it falls far short of
supporting the contention of learned counsel upon the
proposition now under consideration.   A careful ex-
amination of it will demonstrate that it in no way con-
flicts with the clear announcement of the rule applica-
ble to this subject, as announced in the Eswin and
Klockenbrink cases, heretofore referred to.   It follows
from this, even conceding that the defendant, United
Railways Company, introduced evidence after the over-
ruling of its demurrer at the close of plaintiff's case,
still this did not have the force and effect of waiving
its right to have the ruling of the court reviewed by
this court; the only difference being that where the
defendant, after the action of the court in overruling
its demurrer at the close of plaintiff's case, introduced
testimony, this court, in reviewing the ruling of the
trial court upon the question of the liability of the de-
fendant, instead of limiting its review to the testimony
which was introduced up to the time that plaintiff
closed his case, would look to the entire evidence in
the case, no matter by whom offered, nor whether the
demurrer to the evidence was interposed at the close
of plaintiff's evidence in chief, or at the close of all
the evidence.

This brings us to the consideration of the propo-
sition as to whether or not upon a consideration of
the entire disclosures of the record there was any
liability on the part of the United Railways Company
for injuries sustained by plaintiff complained of in this
suit.

In the development of the facts of this case in the trial court the plaintiff, as a part of his testimony in chief, introduced a lease executed by the defendants on the 30th of September, 1899. We deem it unnecessary to burden this opinion with a reproduction of that lease. It will suffice to say that this lease was offered as tending to show that the property in question was leased, while belonging to the United Railways Company, to the St. Louis Transit Company, for operating purposes, and is the same instrument fully set out in the case of Moorshead v. United Railways Co., 203 Mo. 121.

A critical examination of the record before us discloses an entire absence of any testimony whatever, directly or indirectly, connecting the United Railways Company with the injuries received by plaintiff, for which he seeks a recovery in this action, unless it be conceded that the lease as offered in evidence so connects the United Railways Company and the St. Louis Transit Company with the operation of the street railway system as to make them both jointly liable for such injuries. Upon this proposition, as to the liability upon the disclosures of the record now under consideration of the United Railways Company for the injuries received by the plaintiff, it is sufficient to say that in our opinion that is no longer an open question. Substantially this same proposition was presented to the St. Louis Court of Appeals in Moorshead v. United Railways Company, 119 Mo. App. 541, and again passed on by this court In Banc, 203 Mo. 121, and it was expressly held in that case by the Appellate, as well as the Supreme Court, that under the provisions of the lease as introduced in that case (which is the same lease introduced in the case at bar), the defendant United Railways Company was not liable for the tortious acts of the St. Louis Transit Company and the injuries resulting from such acts. This same proposi-

tion was again in judgment before this court in Chlanda
v. Transit Co. and United Railways Co., 213 Mo. 244.
An examination of that case shows that it was sought,
as it is in the case at bar, to hold the United Railways
Company liable for personal injuries inflicted by the
St. Louis Transit Company, its lessee, operating the
railway under the same lease as was offered in evi-
dence in the case at bar. The plaintiff in that case
pursued the same course as the plaintiff in the case
now before us, offered the lease in evidence, and doubt-
less for the same purpose as it was offered in this case.
It was there expressly held by this court, speaking
through LAMM, J., that the United Railways Company,
under the provisions of that lease, was not liable for
injuries received by the plaintiff inflicted by the Tran-
sit Company in operating the railway under its lease
from the United Railways Company. It was sought
in the Chlanda suit to have this court reopen the ques-
tion determined in the Moorshead case, and a request
by learned counsel along that line was made of the
court. In answer to such request this court said: "The
conclusion of Brother GRAVES that the opinion of
GOODE, J., was sound was deliberately arrived at. We
are all of mind that the document in question was a
lease to all intents and purposes, and, as such lease,
was a good defense against liability of the lessor for
torts of the lessee." Emphasizing the conclusion that
the proposition which is now under consideration has
been firmly determined and settled, this court in its
final announcement concerning the contention urged
by the appellant in the last case cited, used this lan-
guage: "Those contentions were examined with fine
patience and acumen by Judge GOODE in the St. Louis
Court of Appeals and were disallowed seriatim. What
he said in that behalf was adopted by this court In
Banc and spread of record as meeting our unanimous
views."

Substantially this same question was ruled adversely to appellant in Westervelt v. Transit Co., 222 Mo. 325.

It is also insisted by the appellant that before the United Railways Company can evade liability as lessor in the lease to the Transit Company, offered in evidence, it must be made to appear that the Railways Company complied with the Constitution of Missouri, article 12, section 20, by obtaining consent of the local municipal authorities and that it accepted the provisions of the legislative act of 1899 by filing a resolution of its board of directors with the Secretary of State. Along the same line it is further contended that it was incumbent upon the United Railways Company to show at least by some sort of evidence that it had complied with the requirements of the statutes of 1899, whereby alone street railway companies, organized prior to the date when section 1188, Revised Statutes of 1899, took effect, might enjoy the benefits, powers and privileges thereof, including the right to acquire railroad property by lease and the right to lease such railway property.

In the treatment of this proposition it must not be overlooked that the plaintiff offered the lease in evidence as a part of his testimony in chief. There was no testimony offered by plaintiff tending to show that the Railways Company had failed to comply with the constitutional provision as herein indicated. The plaintiff simply introduced the lease and nothing whatever was shown or attempted to be shown which would in any way affect its validity or lessen the force and validity of the provisions embraced in such instrument. In our opinion the contentions of learned counsel upon this proposition were, in effect, determined in the Moorshead case. It was there said, in treating of this instrument of lease (which is the same as the one introduced in the case at bar), that "the instrument was introduced by the plaintiff to fasten liability on

the United Railways Company, and there was no con-
tention that the said company was without power to
execute it because of failure to take advantage of the
Act of July 19, 1899, in the manner provided in section
13.  The plaintiff relied on an instrument which she
contended the United Railways Company had execut-
ed, to prove said company was liable to her on sev-
eral grounds; none of which was lack of statutory
power to make a lease.  Hence, it ought to be pre-
sumed, in the absence of proof to the contrary, that
the two companies which were parties to the alleged
lease, or at least the United Railways Company, had
complied with the requirements of the statute authoriz-
ing street railway leases and had become entitled to
the benefits and powers conferred on complying com-
panies.''  In other words, it was in effect held in the
Moorshead case that where plaintiff seeks to hold lia-
ble for her tortious injuries the street railway company
which has leased its properties to another company,
and for the purpose of fastening liability upon it intro-
duces the lease in evidence, the burden is not on the
company to show it has filed with the Secretary of
State its acceptance of the provisions of the act au-
thorizing it to make the lease.  In such case, in the
absence of proof to the contrary, the presumption is
that both companies have complied with the provisions
of the statute.

These identical questions were also in judgment
before this court in the Chlanda case, 213 Mo. 244, and
the point was ruled adversely to the insistence of the
plaintiff.  It was very appropriately suggested in that
case that, had the defendants introduced the lease as
a part of their defense to avoid liability, it might be
said that the plaintiff might possibly be heard on an
objection that the lease was invalid for the reason
that it was not made to appear that the constitutional
and statutory provisions herein indicated had been

224 Sup—17

complied with, but the lease having been offered in
evidence by the plaintiff, without any further show-
ing, then the presumption as mentioned in the Moors-
head case should be indulged.  As applicable to this
proposition see the cases of Bank v. Dandridge, 12
Wheat. l. c. 69; State ex rel. v. Kupferle, 44 Mo. l. c.
158; Insurance Co. v. Smith, 73 Mo. l. c. 371; Chouteau
v. Railroad, 122 Mo. l. c. 384-5.

We see no necessity for further discussing the
propositions as applicable to the United Railways
Company.  If the rules of law applicable to the ques-
tions now in hand are to be longer followed, then we
see no escape from the conclusion that the trial court
should have, at the close of plaintiff's case, given the
instruction in the nature of a demurrer, directing the
jury that the defendant, United Railways Company,
was not liable in this action.  We see no valid legal
reason for departing from the conclusions reached in
the cases heretofore indicated; hence it follows that
the action of the court in granting a new trial, as ap-
plicable to this defendant, was entirely proper.

### III.

This brings us to the consideration of the in-
structions given in this cause as against both defend-
ants.  The most serious proposition with which we are
confronted applicable to the instructions given for the
plaintiff, is, as to the propriety and correctness, upon
the facts developed in this case, of instruction num-
bered 3.  In arriving at a proper conclusion upon this
controverted question concerning the correctness of
said instruction, it necessitates a brief reference to
some of the other instructions given for the plaintiff,
and the testimony upon which such instructions were
predicated.

It will be observed by a careful examination of
plaintiff's instruction numbered 1 that it follows very
closely the language of the petition.  It requires the

jury to find that plaintiff signalled the motorman operating the car to stop and take plaintiff on as a passenger; that the motorman understood the signal and responded thereto by putting on the brake, and slowed the car down to such a speed as to permit a man of ordinary prudence and caution to get on board; that from the actions of the motorman and the fact that the front platform was open, plaintiff was invited to board the car by that platform; that he did board the car by placing his foot on the lower step and taking hold of the rails with his hands, and that he was then jerked off by the motorman suddenly increasing the speed of the car.

By instruction numbered 2 given for plaintiff, the jury were told that in the circumstances stated in instruction numbered 1 the degree of care required by the motorman was the highest practicable care which a capable and faithful railroad man would exercise in the same situation.

All the testimony offered by plaintiff tended to establish the facts required to be found in instruction numbered 1. The theory of the petition as well as of instructions numbered 1 and 2, was that by reason of the motorman responding to plaintiff's signal and slowing down his car, by inviting the plaintiff to board the front end of the car, and the plaintiff having taken hold of the hand-rails and placed his foot on the lower step, the relationship of carrier and passenger was thereby created, and therefore a high degree of care devolved upon the carrier.

Instruction numbered 3 presented this case to the jury upon an entirely different theory from that presented by instruction numbered 1; in fact we do not see how the conclusion can be avoided that the theory indicated in instruction numbered 3 is repugnant to and contradictory to that embraced in instruction numbered 1. It is apparent that instruction numbered 3 is based upon the facts as developed upon the trial

on the part of the defendant that the motorman did not respond to the signal of the plaintiff; that he did not slow down the car; nor did he invite the plaintiff to enter the car in any way, but that plaintiff attempted to board the moving car and in some way lost his balance, fell and was dragged along Garrison avenue while grasping the handhold on the car. It will here be noted that the instruction now under consideration does not recognize that the fact of plaintiff losing his balance, or that he was shaken off in such a way as to lose his balance, were acts of negligence on the part of the defendant, but the question submitted to the jury by that instruction was whether or not the motorman was guilty of negligence in not observing ordinary care to stop the car, after discovering plaintiff's dangerous position, in time to prevent the injury, or at least prevent such serious injury as was suffered by plaintiff. Or in other words, omitted to use ordinary care to stop said car and avoid *further* injury to plaintiff before the latter let go of said handhold. This instruction in effect told the jury that notwithstanding they might believe from the evidence that the motorman did not respond to any signal of plaintiff to permit him to board said car, and that said motorman warned plaintiff by gesture or otherwise not to get on board of said car, still if you find that the plaintiff under the circumstances did attempt to board said car and that if the motorman by the exercise of ordinary care might have seen the dangerous position of plaintiff and omitted to use ordinary care to stop said car and to avoid *further* injury to the plaintiff before the latter let go of his handhold, and if you further believe from the evidence that the failure or omission of said motorman to exercise such ordinary care directly contributed to cause the injuries, or any of them, then your finding should be for the plaintiff.

It is clear that the damages sought to be recovered

under that instruction, and in fact the only damages which might have been recovered under the law as declared in that instruction, even if there was any testimony upon which to base it, was by reason of the omission of the motorman, after seeing the dangerous position of the plaintiff upon the car, to use ordinary care to stop said car and avoid *further* injury to plaintiff before the latter let go of said handhold. In other words, by said instruction the question is presented to the jury as to the negligence of the defendant in omitting to use ordinary care to stop said car, and a recovery is sought against defendant for the *further* injury to the plaintiff by reason of the negligence of the motorman in permitting said car to run a greater distance than it would have run had he exercised ordinary care in trying to stop it.

If this plaintiff did not have any response to his signal to the motorman to stop said car that he might get aboard of it, but in fact received a warning, either by gesture or otherwise not to get on board of said car, as is recited in the instruction now under consideration, manifestly under that state of facts the plaintiff in attempting to get on board said car was guilty of negligence, and this instruction must necessarily assume the negligence of the plaintiff in attempting to board said car, and the only recovery which could be sought upon that state of facts must necessarily be predicated upon the negligence of the motorman, if there was any negligence at all, in failing to use ordinary care to stop said car and thereby avoid *further* injury to the plaintiff by reason, as heretofore stated, of allowing the car to run beyond the point on said avenue where the car could have been stopped by the exercise of ordinary care on the part of the motorman.

We take it that, upon the theory upon which this cause was submitted to the jury by instruction numbered 3, the defendants were not liable for in-

juries received by the plaintiff while running this car a distance which was unavoidable by reason of the fact that the motorman was unable to stop the car within a shorter distance, but were liable for injuries received as a result of being dragged by the car through the negligence of the motorman in unnecessarily running said car beyond the distance in which said car could have been stopped by the exercise of reasonable care.

There was testimony that the car could have been stopped within forty or forty-five feet. Plaintiff testifies that he was carried by dragging fifty or sixty feet; plaintiff's witness McManness says that the plaintiff was dragged about forty feet. The motorman says that the car ran forty or forty-five feet. The two passengers who testified for defendants say the car was stopped within a very short distance. There was other evidence tending to show that the car ran a greater distance than was testified to by these witnesses. Under these circumstances we are unable to conceive how the jury could determine, except by mere guess or conjecture, just when the negligence of the defendant arose, or whether there was any negligence at all, or when the plaintiff received his injuries, whether within the distance reasonably required to stop the car by the exercise of ordinary care, or whether such injuries were received after the negligence of the defendant arose, by permitting said car to run beyond such reasonable distance.

If the plaintiff attempted to board this car after being warned by gesture or otherwise, as is recited in the instruction, and said car could not by the exercise of ordinary care have been stopped in less than thirty-five, forty or forty-five feet, then we think it is clear that the defendant would not be liable for injuries received by plaintiff while he was being dragged this distance, but would only be liable for injuries received as a result of being dragged after the car had traversed

this distance. Whether the plaintiff received his injuries within the first thirty-five, forty or forty-five feet, or whether they were received after having passed that distance, there is absolutely no evidence by which the jury can determine upon the theory of that instruction as to whether the injuries received by plaintiff were at a point for which the defendants would not be liable, or at a point where they would be liable by reason of permitting the car to be run beyond the distance where said car could have been stopped by the exercise of ordinary care. The injuries of plaintiff may have occurred within the distance in which the car could not have been stopped by the exercise of ordinary care, or his injuries and additional injuries might have occurred beyond such distance through the negligence of the motorman; hence it follows that if we apply the well settled rule that "if the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action." [Warner v. Railroad, 178 Mo. l. c. 134.]

The instruction now under consideration is predicated upon the evidence introduced by the defendants, and such evidence is practically adopted for the purpose of furnishing a basis for it. It is clearly based upon the evidence of the defendants, except the testimony relating to the motorman's action in stopping the car, and the distance it ran after the plaintiff attempted to get on. From this it is manifest that the plaintiff in adopting the evidence of the defendants in order to furnish a basis for instruction numbered 3, in effect repudiates his own testimony, as well as that of his witness McManness, both of whom testified that the motorman responded to the plaintiff's signal, slowed the car down to a walk and by his actions invited the

plaintiff to board the front end of the car, thus creating the contractual relation of carrier and passenger, a theory by which a recovery is sought by the allegations in the petition, and was fully presented to the jury by instructions numbered 1 and 2.

If the petition in this cause is to be construed as alleging two causes of action, that is, that the plaintiff was a passenger and through the negligence of the defendants he received his injuries for which he is entitled to recover, and the other cause that he was a trespasser, or that he negligently attempted to board the car of the defendants, but that the motorman discovering his perilous position omitted to use ordinary care to stop said car and avoid *further* injury to the plaintiff before the latter let go of said handhold, and by reason of such negligence the plaintiff received his injuries for which he ought to recover, and it be held that the plaintiff may go to the jury upon said causes of action, when by the proof of one he disproves the other, followed by instruction numbered 3, which is manifestly predicated upon the testimony introduced by the defendants, then we confess that the language used by this court, speaking through Judge VALLIANT, in Behen v. Transit Co., 186 Mo. l. c. 441, may very appropriately be applied to this case. It was there said: "Whilst it is true that a plaintiff's case is sometimes made out, or aided, by defendant's evidence, and also that a jury may believe part of a witness's testimony and disbelieve another part, yet before the plaintiff in this case can avail himself of the defendant's testimony to the effect that the deceased was attempting to leave the car while it was moving, he will have to confess that all of the evidence adduced in his behalf was untrue and that the statement in his petition that the car had stopped and was standing still when the attempt to alight was made, was also untrue, and that only that part of defendant's testimony that suited the plain-

tiff's case was worthy of belief. A party will not be allowed to take such a position.''

We have, and perhaps at unnecessarily great length, indicated our views upon the question of the propriety and correctness of instruction numbered 3. Our conclusion is that such instruction was erroneous upon two grounds. First, that there was not sufficient testimony upon which to base it; second, that the court erroneously directed the jury that ''if you believe from the evidence that the failure or omission of said motorman to exercise such ordinary care directly contributed to cause the injuries (or any of them) . . . then your verdict should be for the plaintiff.'' We have no fault to find with the word ''contributed;'' it is an ordinary word and frequently used in cases where damages are sought for personal injuries; the fault is not with the word, but with the use of it in this instruction upon the facts as developed upon the trial of this cause. If the plaintiff received his injuries by reason of the negligence of the motorman in failing to exercise ordinary care to stop said car and to avoid *further* injury to the plaintiff before the latter let go of said handhold, then clearly such negligence did not contribute to said injury, but was the direct and proximate cause of it. On the other hand if the plaintiff after being warned by the motorman not to get on board of this car, notwithstanding such warning and while said car was running presumptively at its usual speed, ten or twelve miles an hour, attempted to get on and did get on the step of the front platform, as heretofore stated, he was guilty of negligence, and if his injuries were received by dragging within a distance in which the motorman was unable by the exercise of ordinary care to stop the car, it follows that there could be no recovery for such injuries, and as applicable to this case there can be no such thing as the subsequent acts of omission on the part of the motorman contributing to injuries which were received by

reason of the plaintiff's own negligence; hence, it is clear that if the court by instruction numbered 3 intended to direct the jury that if the negligence of the motorman in failing to use ordinary care to stop the car to avoid *further* injury to the plaintiff contributed to cause any of the injuries received by the plaintiff through his own negligence, it was clearly erroneous. Manifestly the negligence upon which instruction numbered 3 was predicated, that is, the failure of the motorman to use ordinary care to stop the car so as to avoid *further* injury to the plaintiff, could in no way contribute to any injuries received by the plaintiff by reason of the negligent acts submitted to the jury by instruction numbered 1.

As heretofore indicated, the two instructions, 1 and 3, are inconsistent with each other. If the facts upon which instruction numbered 1 was predicated are true, it necessarily follows that the facts upon which instruction numbered 3 was predicated were false. Clearly instruction numbered 1 was predicated upon a state of facts which created the relation between the plaintiff and the defendant of carrier and passenger, that is, it told the jury that if the car slowed down in response to plaintiff's signal, and the entrance to the front platform of said car was open, thereby inviting the plaintiff to get aboard, and said car was negligently started by a sudden jerk which caused the plaintiff to lose his balance, as the result of which he was injured, they should find for the plaintiff. Instruction numbered 3 directed them just the reverse, and in effect told the jury that although the car was not slowed down and plaintiff was warned not to get on said car, yet if he was dragged an unnecessarily long distance and this contributed to cause his injuries, they should find for him. We are unable to see how these two assignments of negligence could in any way contribute with each other to produce plaintiff's injuries.

Learned counsel for appellant in their reply brief take the broad position that the defendants are liable for the whole damage by reason of the injuries received by the plaintiff whether those injuries were received within the distance in which the car could not have been stopped by the use of ordinary care, or were received by reason of the unnecessary dragging of him beyond such distance. The insistence of counsel as applicable to this proposition is thus stated: "This phase of the case is presented by the third instruction for plaintiff which is founded on a trite and familiar precept of our American and English law, namely: that where a negligent act contributes directly to produce an injury, the party responsible for that act is 'liable for the whole damage.'" Emphasizing the insistence as above indicated, the contention of appellant is again stated in this form: "If the negligent and unnecessary dragging of plaintiff 'directly contributed to cause the injuries' to plaintiff as the jury found under the third instruction, defendant was liable for all the damages ensuing therefrom."

In support of this contention our attention is directed to numerous authorities (Shearman & Redfield on Negligence, sec. 31), with numerous other cases decided by this court. We have examined all the authorities upon this proposition cited by appellant, and with the highest respect for the views entertained by the learned counsel for appellant, we are unable to agree with counsel that such authorities furnish any support whatever to the contentions as applicable to the facts developed in this case. The learned text-writers, Shearman and Redfield, at section 31, to which our attention has been called, announce this rule: "If the injuries caused by the concurrent acts of two persons are plainly separable, so that the damage caused by each can be distinguished, each would be liable only for the damage which he caused; but if this is not the

case, all the persons who contribute to the injury by their negligence are liable, jointly or severally, for the whole damage.'' [Shearman & Redfield, Neg., sec. 31.]

Clearly that rule is only applicable to cases where two or more defendants by concurrent acts have inflicted injuries upon the plaintiff. With it we have no fault to find; it clearly and correctly announces the rule as applicable to the facts therein stated, but in no way has any application to the facts developed in this case upon which instruction numbered 3 was predicated.

In this case by instruction numbered 3, it is sought to connect the negligence of the motorman in failing to use ordinary care in stopping the car to avoid *further* injury to the plaintiff, with the acts of negligence on the part of the plaintiff himself to the end that the jury were authorized to treat the negligent acts of the motorman as contributing to the injuries received by the plaintiff by and through his own negligence.

Manifestly the distinguished text-writers, in announcing the rule indicated, were not dealing with a proposition arising upon the facts as developed in this case. The same may be said as to the case of Benjamin v. Street Railway Co., 133 Mo. 274, to which counsel direct our attention. In that case a recovery was sought by the plaintiff on the ground of the negligence of the defendant in permitting a scuttle hole to remain in an unsafe, insecure, open, unfastened and defective condition. The facts as disclosed by the record in that case show that Keith & Perry Coal Company was furnishing coal to the defendant under a contract. The coal was hauled in wagons by employees of the contractors to the power-house of the defendant and unloaded through scuttle holes. Defendant gave no directions to the contractors in respect to the manner of unloading the coal and retained no control over

them or their employees in the conduct of their business. A man by the name of Seymore, an employee of Keith & Perry, brought a wagon load of coal to defendant's premises and unloaded it through one of these scuttle holes. When the work by Seymore of unloading this coal had been completed, the coal extended up into the opening so that when the cover was replaced it rested upon the coal. The cover was left in that condition. The plaintiff walked upon it and by reason of the defective condition received injuries. In that case it was clear that both Seymore and the defendants were guilty of negligence. The instruction in that case correctly declared the law. It in effect told the jury that if the injury was caused by the negligent construction of the cover of the scuttle hole directly contributing with the negligence of Seymore in replacing it, defendants would still be responsible for the damage sustained. In other words, the joint negligent acts of Seymore and the defendant caused the injury and a recovery could be maintained against them jointly or severally. As was said by the court in discussing that case: "A single injury was inflicted upon plaintiff by one cause, namely, the tilting of the cover. The damage being inseparable each would be jointly or severally liable for the whole damage. This rule is given by Shearman and Redfield, Neg., sec. 31: 'The mere fact that another person concurs or co-operates in producing the injury, or contributes thereto, in any degree, whether large or small, is of no importance. . . . It is immaterial how many others have been in fault, if the defendant's act was an efficient cause of the injury.'" The rules of law as announced in that case, including the rule quoted from Shearman and Redfield, are unquestionably correct. That case in effect simply announced the well settled rule that where a wrongful act or acts of negligence result in an injury, all persons who contributed to such injury, the damage being inseparable,

would be jointly or severally liable for the whole damage, and in harmony with the rule as stated by Shearman & Redfield, if a recovery was sought against only one of the persons who contributed to such injury it would not constitute any defense for him to show that another person or persons concurred or co-operated in producing the injury or contributed thereto in any degree. If the act of the defendant against whom a recovery is sought was an efficient cause of the injury, then he is liable for the entire damage As heretofore stated, that is not this case, and the rules therein announced have no application to it.

Again, we repeat that by the terms employed in instruction numbered 3, the jury is directed to find a verdict for the plaintiff if they believe and find that the negligent acts of the defendant contributed to injuries which might have been received by the plaintiff through his own negligence. As heretofore announced, in our opinion, there were no injuries received by the plaintiff to which the negligent acts of the defendant contributed, for the reason that if from the negligent acts of the motorman in failing to use ordinary care in stopping the car to prevent *further* injury to the plaintiff, the plaintiff received *further* injury, then such negligent acts did not contribute to those injuries, but were the direct and proximate cause of them, and the term "contributed" has no place upon such a state of facts.

Another case cited by appellant is Holmes v. Railroad, 207 Mo. 149. It will be noted that the point determined in that case was that the rule as to contributory negligence could not be invoked by the defendant to avoid liability where the person injured is a child too young and immature to observe the care necessary to its own preservation. In such case the law does not excuse the defendant's negligence because the negligence of the child contributed to the injury.

The case of Vogelgesang v. St. Louis, 139 Mo. 127,

cited by appellant, furnishes no support to the position taken upon the proposition now under consideration. In that case a recovery was sought for injuries received by reason of the negligence of the defendant in not keeping its street in a reasonably safe condition. The facts developed upon the trial tended to show that the injuries received by the plaintiff were partly due to the defective street and partly to an accident unconnected with the defect in the street, and it was ruled that it was the established law in this State that it is not necessary to a recovery against a municipality that its neglect to keep its street in repair shall be the sole cause of the injury, but the plaintiff or injured party may recover where he or she is in the exercise of ordinary care and prudence, and the injury results partly from the defective street and partly from an accident, unconnected with the defect in the street, for which neither the city nor the plaintiff is responsible. In announcing the final conclusion in that case, this court speaking through Judge GANTT, said that if the street in this case was defective, as the court evidently found it was, and that defective condition contributed with the shying of the mules (caused by the sudden blowing off of steam) to plaintiff's injury, this case falls clearly within that line of cases where the defendant was held liable for the injury. Again it must be said that the court in that case was not dealing with a state of facts as in the case at bar upon which instruction numbered 3 was predicated. That case simply holds that if the street was defective and such defective condition of the street contributed with another occurrence, that is, the shying of the mules (caused by the sudden blowing off of steam), the defendant was liable. In other words, upon the last analysis of the facts developed in that case the injuries received are finally to be traced to the defective condition of the street. As a demonstration of this fact a similar reasoning might be employed to

that in the case of Bassett v. St. Joseph, 53 Mo. 290; that is, it may be true that if it had not been for the shying of the mules which was caused by the sudden blowing off of steam, the injury might not have occurred, but it is equally true that if there had been no defect in the street or if the street had been in a reasonably safe condition, the shying of the mules would have been harmless and no injury would have occurred. Manifestly that case falls far short of sustaining the contention that if the negligent acts of defendants' motorman in the case at bar in failing to use ordinary care in stopping the car so as to prevent *further* injury to the plaintiff, contributed to any injuries which the plaintiff might have received by and through his own negligence, then and in that case the plaintiff is entitled to a verdict for the entire damages, whether such injuries were received through his own negligence or whether they were *further* injuries received by the plaintiff by reason of the negligent act of the motorman in failing to use ordinary care in stopping the car.

In Harrison v. Electric Light Co., 195 Mo. 623, we find that case simply reviews a number of other cases in this State emphasizing the well settled law that a defendant may be liable even if the accident was not caused by his sole negligence and that he is liable if his negligence concurred with that of another or that of an act of God, or that of an inanimate cause and thereby became a part of the direct and proximate cause of the injury, although not the sole cause. The rules of law in that case in no way conflicts with the conclusion as herein indicated, applicable to facts of the case at bar.

In Deschner v. Railway, 200 Mo. 310, several consistent assignments of negligence were pleaded in the petition, and it was held by the court that the word "contributed" as used in the petition in that case, should be construed as meaning that the several acts

of negligence alleged contributed with each other in causing the injury. Clearly that case has no application to the question now under consideration concerning the propriety of predicating the declaration of law upon the state of facts as disclosed by the record now before us.

We see no necessity for further extending this review of the authorities cited by appellant upon this proposition. It is sufficient to say that we have given to all the citations careful consideration, and in our opinion the rules as announced by the authorities to which our attention has been directed in no way conflict with the conclusions as herein indicated applicable to the facts in the case at bar. Our conclusion is that the action of the court in granting a new trial in this case was entirely proper on account of the errors as herein pointed out in instruction numbered 3.

## IV.

This brings us to the consideration of instruction numbered 6. We do not deem it essential to indulge in an extended dicussion upon the legal propositions presented by counsel in this case arising from the presentation of the law to the jury as is declared in that instruction. As this case must be retried, we deem it unnecessary to determine whether or not if the errors as pointed out in instruction numbered 6 by learned counsel for respondent stood alone, they would furnish a sufficient basis for the maintaining of the action of the trial court in granting a new trial. It is sufficient to say respecting said instruction that if the other instructions did not designate the injuries for which defendants were liable, then that part of instruction numbered 6 which directs the jury to assess compensation ''on account of such injury or injuries as you find from the evidence defendants are liable for under the other instructions of the court,'' should be omitted.

Upon the remaining proposition, wherein it is con-
tended that the trial court erroneously directed the
jury that if they found the issues for the plaintiff, in
assessing his damages they might take into considera-
tion any expenses paid for nursing him, which they
believed from the evidence was rendered necessary by
reason of the results of the injuries, it is only neces-
sary to state that the disclosures of the record upon
that question are very unsatisfactory.  Dr. Bernays
testified that plaintiff was in bed about three months,
and further stated that "we employed trained nurses,
sometimes two and sometimes one, to keep a constant
watch over him."  There is an entire absence of any
evidence showing the time that such trained nurses
served, the value of their services, whether they were
paid anything by anybody authorized to employ them,
or by whose authority they were employed and who
incurred the liability for such services.  It is not dis-
closed by the record that Dr. Bernays or the persons
embraced within the terms "we employed trained
nurses," paid anything for the services of such nurses,
nor is there any proof that plaintiff paid anything for
nursing, or that he agreed to do so, or that he in-
curred any liability on account of nursing, further than
might be implied from the rendition of such services.
It is insisted by counsel for appellant that the
item for nursing was embraced in the twenty-
five hundred dollars which the plaintiff testified
he paid out for drugs, medicines and medical
attention.  Dr. Bernays nor any other witness
makes any intimation that they paid for the
services of the trained nurses and embraced it in their
bills for drugs, medicines and medical attention.  If
the expenses for nursing were embraced in the twenty-
five hundred dollar item, then it was only necessary to
direct the jury to consider necessary medical care and
treatment, and should not have added such direction,
"and for nursing him."  It is extremely doubtful upon

these disclosures of the record as to whether or not the testimony was sufficient upon which to predicate the direction to the jury to consider the expenditure of any amount for the nursing of plaintiff, and if the testimony was insufficient upon this subject then such instruction is not in harmony with the cases of Gibler v. Railroad, 203 Mo. l. c. 224, as well as Cobb v. Railroad, 149 Mo. l. c. 630.

We have indicated our views upon the leading propositions disclosed by the record, which results in the conclusion that the action of the trial court in making its order granting a new trial was entirely proper, and should be affirmed. It is so ordered. All concur.