# BEHEN v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, February 15, 1905.*

1. **PLEADING: Negligence: Inconsistent Grounds: Election.** Plaintiff's petition alleged two grounds of negligence: first, that while the car was stopped deceased stepped on the running board and while in the act of alighting therefrom the car was negligently suffered to start and by that movement she was thrown to the pavement and injured; and, second, that the conductor allowed her to leave the car while it was in motion. *Held*, that these averments are inconsistent, and defendant's motion to compel plaintiff to elect on which allegation he would stand should have been sustained. These are not pleading in the alternative.

2. ——: ——: ——: **Supported by Defendant's Testimony.** Where one allegation is that deceased was injured by the negligent starting of the car while deceased was trying to alight in the exercise of reasonable diligence, and the other is that she was allowed to attempt to get off of a moving car, and plaintiff's testimony totally fails to support the latter charge, he will not be permitted to recover on defendant's testimony to the effect that deceased was attempting to leave the car while it was in motion, for thereby he is forced to confess that the other allegation and all his testimony in support thereof were untrue.

3. **STREET CAR: Alighting: Reasonable Time.** Where the conductor sees a passenger on the running board of a street car in the act of alighting, he has no right to start the car while she is in that position even if she takes longer time to alight than she should do.

*Note—Decided December 22, 1904; motion for rehearing filed; motion overruled February 15, 1905.

4. ———: ———: **From Moving Car: No Evidence.** Where there is no evidence to sustain the charge that plaintiff's mother was permitted to leave the car while it was in motion, it is useless to instruct the jury that it was the duty of the conductor "to use reasonable care to prevent her from leaving the car whilst it was in motion."

5. ———: ———: **Issue Submitted by Appellant: Estoppel.** Where appellant did all that he could to prevent the submission of a question which should not have been submitted, and his efforts were unavailing, and the question was submitted under instructions asked by his adversary, the fact that he asks an instruction presenting the question in a favorable aspect to himself will not estop him from saying on appeal that the question should not have been submitted at all.

6. ———: **Alighting from Moving Car: Warning.** It is not improper to instruct the jury that if the injured passenger attempted to get off of a moving car "after the conductor had warned her not to do so" and that if her attempting to get off under those circumstances was the cause of her injuries, then the railway company was not liable for her injuries—if the charge that she was allowed to get off of a moving car is a legitimate cause of action, and that is the case made in plaintiff's pleading and proof. But where the case pleaded and as shown by plaintiff's evidence is that the car stopped and while it was stationary she attempted to alight and while she was in the act of alighting the car was negligently started and that motion threw her to the ground and injured her, the plaintiff is not entitled to recover if she attempted to alight from the car while it was moving and fell in that attempt, even though the conductor did not give her any warning.

7. **NEGLIGENCE: Survival of Action: Statutory Compensation.** The plaintiff, an only child, brought suit in the name of his guardian, for the negligent injury to his mother received in an attempt to alight from a street car, from which injury she died, and after judgment, which on this appeal is reversed for error, he himself died, and the suit was revived in the name of the administrator of his estate. *Held*, that the cause of action, notwithstanding the reversal of the judgment, survives to the plaintiff's administrator, and is remanded to the circuit court for a new trial. The action arises not under the common law, but the statute, which vests in the minor a right to compensation for the loss sustained in the death of his parent, and the wrongdoer is not by the death of the minor discharged from the obligation to respond in damages for the amount of that compensation as fixed by the statute.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Geo. W. Easley* and *Martin & Woolfolk* for appellant.

(1)   The court should have required plaintiff to elect on which charge of negligence he would stand and go to trial.   The two charges of negligence are inconsistent with one another and cannot stand together for the reason that they are in irreconcilable conflict, in this, that the first charge of negligence is that defendant started its car from a standing position while the plaintiff was standing on the running-board in the act of alighting therefrom, whereas the second charge of negligence in the petition is that defendant was negligent in that its conductor permitted and allowed the plaintiff, a woman, in violation of the ordinance of the city of St. Louis, to leave the car while it was in motion.   On plaintiff's own statement in his petition it necessarily follows that the proof of one alleged negligence would disprove the other. When this is true there must be an election.  (2) He who desires to avail himself of the benefit of a statute must state facts sufficient to bring himself within its provisions.   Reynolds v. Railroad, 85 Mo. 90; Emmerson v. Railroad, 111 Mo. 161; Sumner v. Rogers, 90 Mo. 324.   The trial court erred in permitting plaintiff, over the objection of defendant, to change the cause of action herein by inserting the word "negligently" in the petition, thereby changing the plaintiff's cause of action from an action *ex contractu* to one *ex delicto.*   Without the amendment permitted by the court defendant's petition is a model form for an action founded on contract, and there is no limit or suggestion in the pleading that plaintiff in-

tended to bring the suit under the Damage Act, except the amount for which he prays judgment. Plaintiff is not allowed to change his cause of action. Huston v. Tyler, 140 Mo. 252; Cole v. Armour, 154 Mo. 351. (3) Plaintiff improperly joined in the same petition actions *ex contractu* and *ex delicto*. Sumner v. Rodgers, 90 Mo. 324; Southworth Co. v. Lamb, 82 Mo. 242; O'Riley v. Diss, 48 Mo. App. 62; Jamison v. Copher, 35 Mo. 483; Ederlin v. Judge, 36 Mo. 350; Pruett v. Warren, 71 Mo. App. 84; Clements v. Yates, 69 Mo. 624. (4) A fair consideration of the testimony of all the witnesses who testified in this case, and the showing of all the facts and circumstances connected with the accident, plainly disclose that there is no evidence in the case to support the verdict of the jury and judgment of the court. And on this proposition no reasonable mind can have a doubt. And for this reason the case should be reversed. Griswold v. Railroad, 64 Wis. 652; Hurt v. Railroad, 94 Mo. 255; Strauss v. Railroad, 75 Mo. 185; Yarnell v. Railroad, 113 Mo. 570; Jackson v. Railroad, 118 Mo. 224; Saxton v. Railroad, 98 Mo. App. 494. (5) The record abundantly shows that defendant, by its servants and employees in charge of the car on which plaintiff's mother was a passenger during the entire time that she was a passenger on said car, exercised the highest practical degree of care such as would be exercised by careful and skilled railroad employees under like circumstances, to carry the plaintiff's mother safely as such passenger to her point of destination and that the car stopped at her point of destination a much longer time than was necessary for plaintiff's mother, in the exercise of ordinary care for her own safety, to alight from said car. If this is true, then the defendant is not liable, notwithstanding plaintiff's mother was injured by the accident, and died from said injuries. Carriers of passengers are not insurers of the safety of their passengers. When

everything has been done which human prudence and foresight can suggest, accidents may and do happen, in which cases the carrier is not responsible. Sawyer v. Railroad, 37 Mo. 240; Gibson v. Railroad, 76 Mo. 282; Henry v. Railroad, 113 Mo. 526; Hite v. Railroad, 130 Mo. 132; Feary v. Railroad, 162 Mo. 100; Peck v. Railroad, 178 Mo. 617; Bartley v. Railroad, 148 Mo. 124. (6) The proof does not conform to the cause of action specified in the petition and the variance is fatal. Price v. Railroad, 72 Mo. 414; Waldhier v. Railroad, 71 Mo. 314; Peck v. Railroad, 178 Mo. 617; Harty v. Railroad, 95 Mo. 368; Feary v. Railroad, 162 Mo. 96; Crawford v. Aultman & Co., 139 Mo. 271. (7) According to plaintiff's theory of the case, the showing of physical facts destroys plaintiff's chance of recovery. What was plaintiff's mother doing that she did not avail herself of the ample time and opportunity to get off the car safely when the five or six other passengers were alighting from more remote parts of the car at the same point of destination? The conclusive and inevitable inference is that she was guilty of gross negligence by an omission of duty in not alighting from the car when it had stopped a reasonable time to permit passengers to alight. Plaintiff's intention is at war with the common sense and experience of man. Weltmer v. Bishop, 171 Mo. 116; Weber v. Railroad, 100 Mo. 201; Keown v. Railroad, 141 Mo. 93; Bursching v. Gaslight Co., 73 Mo. 229; Carroll v. Railroad, 107 Mo. 659. (8) The court erred in giving on its own motion instructions 1, 2 and 3, which instructions licensed and authorized the jury to return a verdict against defendant without regard to the time and place plaintiffs mother fell from defendant's car and received her said injuries, and in utter disregard of the specific cause of action laid in the petition. It is elementary and axiomatic law that the plaintiff can not count on one cause of action and recover on another. The proof must be confined to the negligence as laid in the petition. Price

v. Railroad, 72 Mo. 414; Buffington v. Railroad, 64 Mo. 246; Waldhier v. Railroad, 71 Mo. 514; Hite v. Railroad, 130 Mo. 132; Fuchs v. St. Louis, 133 Mo. 197; Whetstone v. Shaw, 70 Mo. 579; Haynes v. Trenton, 108 Mo. 130; Helena Creamery Co. v. Atkinson, 90 Mo. App. 399; Haines v. Pearson, 100 Mo. App. 551; Chitty v. Railroad, 148 Mo. 65; Raming v. Railroad, 157 Mo. 477; Conrad Grocer Co. v. Railroad, 89 Mo. App. 534. (9) The court committed very prejudicial error in refusing to give to the jury instructions 6, 7, 8, 11, 12, 13 and 14, requested by defendant, the effect, object and purpose of said instructions being to limit plaintiff's right of recovery to the negligence as specifically laid in the petition and to exclude from the consideration of the jury all other negligences, if any, of the defendant that might be connected with plaintiff's mother falling from said car at any other point or under any other circumstances than those alleged and charged in the petition. Said instructions declare the well-settled law of this State, and should have been given to sustain this point. Authorities cited last above.

*A. R. Taylor* for respondent.

The law governing the relation of carrier and passenger is that the carrier must stop the car at the passenger's destination, and keep it stopped a reasonable time to enable any passenger to alight in safety from the car whilst so stopped. And, after doing this and before starting the car, it is the duty of the conductor to see that no passenger is in the act of leaving the car and in danger from the starting of the car. Keller v. Railroad, 27 Minn. 182; Hutchinson on Carriers, sec. 612; Becker v. Realty Co., 174 Mo. 246. The evidence shows that deceased was using due diligence to get off the car. Both she and her mother arose from their seats when the car stopped, as plaintiff's evidence showed, and defendant's conductor grounded the de-

fense on the alleged fact that she was getting off too quick. The deceased, as the evidence shows, was in plain view of the conductor when she arose and was getting down from the car on the running-board and preparing to step off. Why did he start the car under these circumstances, even if two or more passengers had gotten off the car? How can such conduct of the conductor be reconciled with the rule of his duty, prescribed in the Becker case, supra? Appellant's second point is a reproduction of his first. He says that deceased could have jumped off the car quicker, because other passengers had gotten off. Under the law of the Becker case this is no excuse for starting the car. Suppose another or other passengers could and did get off the car. Yet the evidence for plaintiff shows that deceased was proceeding to get off the car, say, if you will, not in a hurry or confusion. She was on her feet while the other passengers were stepping off—both she and her aged mother. Suppose she was a little slower in stepping off—she was in plain view of the conductor. Her mother was on her feet to get off. Apply the law of the Becker case to these facts and appellant's contention has no support. The plaintiff's evidence shows that he started the car whilst she was getting off. He not only permitted her to get off whilst the car was in motion, but caused the car to be in motion whilst she was getting off. How can it be said that this was not permitting her to leave the car whilst it was in motion, when he himself was the cause?

VALLIANT, J.—Plaintiff's mother was a passenger on one of defendant's street cars and fell while attempting to alight therefrom and received injuries from which she soon afterwards died. The plaintiff was the only child of deceased, who was his only living parent, and was a minor. The suit was brought in the name of the minor by his guardian and curator to re-

cover damages, under the statute, on the ground that the accident was caused by the negligence of defendant; it was begun in the circuit court of the city of St. Louis, and taken by change of venue, on the application of defendant, to Lincoln county, where it was tried, with the result that there was a judgment for the plaintiff for $5,000, from which the defendant appealed. After the appeal was taken, the plaintiff died and the cause was revived in the name of the administrator of his estate.

There are two acts alleged as negligence on the part of the defendant: first, that when the car reached the destination of plaintiff's mother it stopped in compliance with a signal, given by her or some other passenger, to enable her to alight, and that while she was in the act of alighting, before she had a reasonable time to alight, the car was negligently caused to start forward and she was thereby thrown to the ground and received the injuries of which she died; second, that at that time there was an ordinance of the city to the effect that conductors of street cars should not allow women or children to enter or leave a car while the same was in motion, but that in violation of that ordinance the conductor of this car did allow the plaintiff's mother to leave it while it was in motion and thereby "directly contributed to cause the injury and death of the plaintiff's mother."

The answer was a general denial and a plea that the plaintiff's mother was guilty of negligence which contributed to the accident, in this, that she negligently attempted to alight from the car while it was yet in motion and before it had stopped and got off backwards, and in doing so negligently disregarded the warning given her by the conductor not to alight from the car until it stopped.

The reply was a general denial.

At the beginning of the trial defendant moved the court to require the plaintiff to elect upon which of the

two alleged acts of negligence he would stand, on the ground that they were inconsistent and could not both be true. The motion was overruled and exception taken.

The evidence for the plaintiff tended to prove that the deceased took passage on defendant's car at Forest Park to go east to Grand avenue. It was an evening in June and it was a summer car, the seats running horizontally across the car, and the means of ingress and egress were running-boards, or footboards, one on each outer side the full length of the car.

Finney avenue runs from west to east having its east terminus at Grand avenue. The course of the car was from the west through Finney into Grand avenue, where the tracks turn south. The usual stopping place to discharge passengers is just after the car passes through the curve into the tangent. When this car was approaching that point a signal was given the conductor to stop, he gave the signal to the motorman, and the car stopped at the usual point. When it stopped several passengers got off and among them the plaintiff's mother arose and stepped on the running-board, in the act to alight, and was doing so, but before she had a reasonable time to alight and while she was yet on the running-board, the conductor gave the motorman the signal to start, the car started, the movement threw the plaintiff's mother to the ground, and she received injuries from which she died.

At the close of the plaintiff's case, the defendant asked an instruction in the nature of a demurrer to the evidence, which the court refused, and exceptions were taken.

On the part of the defendant, the testimony tended to prove that the car had not stopped when the deceased attempted to alight but while it was slowing down to stop, the deceased arose and stepped down upon the running-board in the act of alighting, her face to the rear; the conductor saw her and called to

her, saying, "Don't step off there now, lady, wait until the car stops," but she disregarded the warning, stepped off backwards, that is, her back to the front of the car, and in doing so fell and suffered the injuries mentioned.

The giving and refusing of instructions are assigned as error and they will be noticed hereinafter.

I.   The court ought to have sustained the motion of defendant to require the plaintiff to elect which of the two allegations of negligence he would stand upon, viz., first, that the car stopped, and while it was so the deceased stepped on the running-board in the act of alighting, when the car was negligently suffered to start and by that movement she was thrown to the ground; second, that the conductor allowed her to get off while the car was in motion.

Those two allegations are inconsistent. If she was attempting to alight while the car was stationary and was thrown down by its sudden starting, then she was not attempting to alight while the car was moving. Men get on and off the cars while they are going and the ordinance does not make it the duty of the conductor to attempt to control them in that respect, but it seems to contemplate that women and children are more liable to accidents in attempting such a feat and that conductors should not allow them to attempt it. Just how much restraint a conductor under this ordinance would be authorized to exert in case a grown woman should insist on using her own judgment in such emergency, it is unnecessary now to say. Plaintiff's theory is that since the conductor gave the signal and thereby caused the car to move while the woman was in the act of alighting he thereby allowed her to leave the car while it was in motion within the meaning of the ordinance and in that view the two allegations of negligence might both be true.

To allow an act to be done is to suffer or permit some one who wants to do it, to do so; it is acquies-

cence in the purpose of another. If a conductor while his car is in full speed should, with force and arms, seize a woman and throw her from the car, that would not be his allowing her to alight from a moving car. Nor with any more reason could it be said that because he caused her to be thrown to the street by suddenly starting the car while she was on the running-board in the act of alighting he thereby allowed her to leave the car while it was in motion.

The ordinance contemplates interference by the conductor when a woman or a child is indicating an intention to do the dangerous act of boarding or leaving a car while it is in motion. Action indicative of such an intention is essential before the conductor can be expected to know that such intention exists. It is, therefore, the action of the passenger which shows whether she was designing to alight from a car that was stationary or from one that was moving, and the action which proves the one disproves the other. These two acts are not pleaded alternatively in the petition in this case, as may sometimes be done under section 626, Revised Statutes 1899, but it is stated that both are true; that the deceased was getting off while the car was standing and that the conductor allowed her to get off while it was moving. Both can not be true.

II. If, however, it should be conceded that the plaintiff had a right to prove, as an act of negligence, that the conductor violated the ordinance in question, there was no evidence tending to establish the fact that he allowed the deceased to leave or to attempt to leave the car while it was in motion.

The plaintiff's evidence was that she did not attempt to get off until the car stopped, and the petition so stated; the only evidence tending to show that she was trying to get off while it was moving is that introduced on the part of the defendant, and it was to the effect that as soon as her act indicated such an intention the conductor called to her to wait until the car

stopped. It does not appear that he was close enough to lay hands on her to restrain her by force, even if he had had a right to do so, but when he warned her to wait until the car should come to a stop, her act in disregard of the warning can not be said to have been with his acquiescence or permission. Whilst it is true that a plaintiff's case is sometimes made out, or aided, by the defendant's evidence and also that a jury may believe part of a witness's testimony and disbelieve another part, yet before the plaintiff in this case can avail himself of the defendant's testimony to the effect that the deceased was attempting to leave the car while it was moving, he will have to confess that all of the evidence adduced in his behalf was untrue and that the statement in his petition that the car had stopped and was standing still, when the attempt to alight was made, was also untrue, and that only that part of the defendant's testimony that suited the plaintiff's case was worthy of belief. A party will not be allowed to take such a position.

III. The court did not err in refusing the instruction in the nature of a demurrer to the evidence. There was substantial evidence that the car stopped, that several passengers, who were quicker in their movements than the deceased was, alighted safely, and she was in the act of doing so, had reached the running-board and the indications were that she would have landed safely, but the conductor, who was in a position where he must have seen her, gave the signal to go and the car started and by that movement she was thrown to the ground. The argument for defendant is made that even taking the plaintiff's evidence as true the car stopped long enough for others to get off, that the deceased was so conveniently seated in the car that if she had exercised reasonable care she could have alighted as soon as others did, therefore, the car did stop a reasonable length of time. But if the conductor was doing his duty, he would have seen the woman when she

was on the running-board (if the plaintiff's testimony is true), and he had no right to start the car while he saw her in that position, even if she took longer time to alight than she should have taken.

IV. The instructions, as is usual in such cases, are quite voluminous, and, therefore, we will not copy all of them herein, but only those criticised.

In the third instruction given at the request of the plaintiff, the jury are told that it was the duty of the conductor "to use reasonable care to prevent plaintiff's mother from leaving the car whilst it was in motion." That was wrong because, as we have seen, even if that was a legitimate charge of negligence, there was no evidence to sustain it. We see no other error in the instructions given at the request of the plaintiff.

An instruction was given at the request of the defendant referring to this ordinance and saying in effect that even though the conductor saw the plaintiff's mother preparing to leave the car while it was in motion, he was not required to forcibly restrain her, but it was sufficient if he warned her not to do so. As a general rule, a party will not be heard to complain of the submission of a question to the jury which ought not to have been submitted if it is submitted in an instruction asked by himself. But when a party has done, as this defendant did, all that he could do to prevent the submission of the question and his efforts have been unavailing and the question is submitted under instructions asked by his adversary, the fact that he asks instructions presenting the question in a favorable aspect to himself will not estop him from saying in the appellate court that the question should not have been submitted at all.

The defendant requested the following instructions which the court refused:

"7. The court instructs the jury that if you believe from the evidence in the case that after Margaret

Austin had safely boarded defendant's car and obtained a seat therein, she did, while said car was still in motion and before it reached the regular stopping place for leaving and taking passengers at the point of her destination, to-wit, Grand and Finney avenues, in the city of St. Louis, leave her seat and walk off of said car and step down on the running-board of said car and stepped from the running-board of said car onto the street, whereby she sustained the injuries complained of, then the plaintiff can not recover in this suit and your verdict must be for the defendant.

"8. The act of negligence stated in the plaintiff's petition is denied in the answer of defendant. The defendant further pleads in said answer that the deceased's death was caused by her own negligence in stepping off of defendant's car while the same was in motion. If, therefore, you find from the evidence that deceased's death was not caused by a start of the car, but by her act in stepping off of defendant's car while the same was in motion, then plaintiff is not entitled to recover and your verdict must be for the defendant.

"9. The court instructs the jury that under the pleadings and the evidence in the case the plaintiff is not entitled to recover and your verdict must be for the defendant.

"10. The court instructs the jury that, under the pleadings and the evidence in this case, the plaintiff is not entitled to recover upon the charge of the petition that the defendant's conductor, in violation of an ordinance of the city of St. Louis, permitted the deceased, Margaret Austin, to alight from a moving car.

"13. The court instructs the jury that if they find and believe from the evidence that the deceased's death was caused in any other manner than by the motion of the car, in starting forward from a standing position, then the plaintiff is not entitled to recover, and your verdict must be for the defendant."

The court modified instructions 7 and 8 by insert-

ing in number 7 after the word "street" the words "after having been warned by the conductor not to leave the car till it stopped," and in number 8, after the second word "motion," the words "after being warned by the conductor not to do so."

It was not error in the court to give those instructions with those modifications, because if the plaintiff's mother attempted to get off the car before it stopped and after the conductor had warned her not to do so, and if her attempting to get off under those circumstances was the cause of the accident, then the defendant was not liable.

But whilst the defendant was not liable under the hypothesis set out in the modified instructions, it was also not liable under the facts propounded in the instructions as asked.

Under the plaintiff's pleading and evidence, he was entitled to recover only if the facts were that the car stopped and while it was stationary the plaintiff's mother attempted to alight and while she was in the act of alighting the car was negligently put into motion and that motion threw her to the ground.

If the facts were that the car had not stopped and if she attempted to alight from it while it was moving and fell in that attempt, the plaintiff is not entitled to recover, even though the conductor did not give her warning, because that is not the case made in the plaintiff's pleading or proof. Therefore, whilst it was not error to give the instructions as modified, it was error to refuse them as asked. They might have been given in both forms with propriety.

Instruction numbered 9 which was a demurrer to the evidence was properly refused as has already been said.

Instruction 10 which was aimed to take the question of negligence under the city ordinance from the jury should have been given for the reasons above stated.

From what has already been said it follows that instruction number 13 should have been given.

The effect of the giving of the instructions as given, and the refusing of those refused, was to submit two inconsistent theories to the jury and to authorize them to find for the plaintiff on either one, that is, if the deceased was attempting to leave the car after it had stopped to allow her to alight and she was thrown to the ground by its sudden start, or, if she was attempting to leave the car before it stopped and had fallen because of its moving.

Under those instructions, the jury was authorized to render a verdict for the plaintiff even if they discredited all the evidence offered by him and in spite of the allegations in his petition. That was a serious error for which the judgment must be reversed.

V. A question now arises which has not before been decided by this court. The plaintiff having died while this appeal has been pending and the judgment being reversed, does the cause of action survive? Under the evidence in the case, if the plaintiff were living he would be entitled to have the cause remanded for a new trial.

A cause of action for personal injuries suffered by the plaintiff through the negligence of the defendant is an action *in delicto* which ceases by the death of either the plaintiff or the wrongdoer. [Davis v. Morgan, 97 Mo. 79; 1 Cyc. Law and Proc., 50.] But when judgment is obtained in the lifetime of the plaintiff, the cause of action is then merged in the judgment and becomes a debt by judgment and upon the plaintiff's death, the debt survives to his administrator; but if on appeal the judgment is set aside and vacated the claim then is restored to its original nature, a cause of action arising out of a tort which does not survive to the administrator. [Crawford v. Railroad, 171 Mo. 68.]

But now we have, not an action for injuries to the

plaintiff's person, nor an action to recover for the mental and physical suffering of his mother, but an action for compensation for what he lost by his mother's death. The action arises not under the common law but under our statute, section 2864, Revised Statutes 1899, which is mainly copied from the English statute, 9 and 10 Vic., ch. 93, commonly called Lord Campbell's Act.

In Seward v. Vera Cruz, 10 L. R. (App. Cas.) 59, the question was, did the Court of Admiralty under the statute which gave it "jurisdiction over any claim for damages done by any ship" have jurisdiction of a claim arising under Lord Campbell's Act, and it was held by the House of Lords that it had not. The language of the opinions in that case has especial reference to the law governing proceedings *in rem*, in admiralty, but the nature of the action given in Lord Campbell's Act is discussed in that connection, and it was held that that act created a new action and did not merely remove a restriction from the action given by the common law. It is there said, l. c. 67: "Lord Campbell's Act gives a new cause of action clearly, and does not merely remove the operation of the maxim, '*actio personalis moritur cum persona*,' because the action is given in substance not to the person representing in point of estate the deceased man, who would naturally represent him as to all his own rights of action which could survive, but to his wife and children, no doubt suing in point of form in the name of his executor."

In 4 Sutherland on Damages (3 Ed.), sec. 1260, the author, discussing statutes modeled after the English statute, says: "The death of a person entitled to sue pending the suit neither abates the action in the common law sense, nor is the cause of action to be compensated for, discharged; but in such a case the damages which may be recovered will be limited in duration to the extent of the lifetime of such person."

In support of the text, the author cites Cooper v. Shore Electric Co., 63 N. J. L. 558, and Meekin v. Railroad, 164 N. Y. 145, both of which sustain the text.

The argument in both those cases is to the effect that the statute gives a right of action to recover the pecuniary loss that the plaintiff has sustained in the death of the person killed. The arguments in both cases would apply more literally to a case arising under the next succeeding sections of our damage act than to one arising, as does this case, under section 2864, because, under this section, the damages are fixed at $5,000, whilst in the next sections "the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default." But although the statute fixes the amount of damages in the one section and leaves it to be fixed by the jury in the other, there is no difference in the principle involved; in both cases the damages are given as compensation to the plaintiff for his pecuniary loss in the death of the person killed, not for the suffering of that person.

The New Jersey court, in the case above cited, said, l. c. 565-6:

"If the death of the beneficiary before the end of the litigation discharges the liability of the wrongdoer, the legislative purpose that the wrongdoer should make compensation to the beneficiary for the pecuniary injury sustained by him would be defeated. Such a construction would be contrary to the policy of this legislation and would thrust into the administration of a statutory proceeding, which our courts have declared should be beneficially construed, a technical rule of the common law of harsh injustice. The death of

the beneficiary pending suit will have a controlling influence over the quantum of recovery. The personal injury sustained would be limited in duration and extent to his lifetime. But the death of the beneficiary pending suit can not be made available to abrogate the liability of the wrongdoer incurred for the pecuniary injury already sustained. The right to compensation vested in the beneficiary immediately upon the death of the deceased. By the death of the beneficiary, pending the suit, there was neither an abatement of the action in the common law sense, nor was the cause of action to be compensated for discharged.''

The reasoning of the New York court was along the same line and in both courts the decisions were unanimous.

We are of the opinion that the right of action in this case, on the death of the plaintiff, survived to his administrator.

The judgment is reversed and the cause remanded to the circuit court to be retried according to the law as herein expressed.

*Brace, P. J.*, concurs; *Marshall, J.*, concurs in all except paragraph V; *Robinson, J.*, absent.