# WM. H. ANDERSON v. JAMES C. DAVIS.

### Springfield Court of Appeals, May 10, 1923.

1. **RAILROADS: Automobile Driver Held Negligent.** In action for damages for death of plaintiff's wife in plaintiff's automobile, struck by train at railway crossing, plaintiff's own testimony that, when running about four miles an hour, about fifty feet from the track he looked both ways, and began to shift his gears, and when he had done this he was close to the track, too late to stop, *held* to show his contributory negligence as a matter of law; the law requires persons approaching a railroad crossing to look and listen and use ordinary care to avoid a collision, the presence of a railroad track being a warning of itself, and if plaintiff had continued to look until past the danger point, regardless of whether whistle or bell was sounded, the collision would not have occurred.

2. ————: **Plaintiff's Own Testimony Held to Preclude Recovery** under the Humanitarian Doctrine. In action for death of plaintiff's wife occasioned by railroad crossing collision, plaintiff's testimony that he gradually decreased his speed until his automobile was traveling at about five miles an hour when it was fifty feet from the track, and from that point to a point about twenty-five feet from the track the speed was decreased to three or four miles per hour, which was so slow that he had to shift his gear from high to intermediate at that point, and that he then speeded up his car onto the track, and was struck just as he was going over, precluded recovery under the humanitarian rule, and he could not aid his case in this respect by portions of testimony of defendant's fireman while rejecting other portions.

*Held*, by COX, P. J., dissenting, that there was a case made for the jury under the humanitarian doctrine, under the rule that a jury may believe part of the testimony of a witness while rejecting another part.

Appeal from the Circuit Court of Jasper County.—*Hon. Grant Emerson*, Judge..

REVERSED.

*W. F. Evans, Geo. J. Grayston* and *Mann & Mann* for appellant.

(1) Plaintiff was guilty of negligence as a matter of law. Tannehill v. Railroad, 279 Mo. 158; Lyter v.

Hines, 205 Mo. App. 429; Langley v. Hines, 227 S. W. 877; Underwood v. West, 187 S. W. 84; England v. Railroad, 180 S. W. 32; Burge v. Railroad, 244 Mo. 76. (2) Petition does not state a cause of action under the humanitarian doctrine for the reason that it is not alleged that plaintiff or his wife was oblivious to the danger and that his or her obliviousness was, or by the exercise of ordinary care could have been, apparent to the servants of defendant. A petition fails to state a cause of action under the humanitarian doctrine unless obliviousness is pleaded. Rubick v. Sandler, 219 S. W. 401, 406; Haines v. Railway, 203 S. W. 631-632; Kamoss v. Railway, 202 S. W. 434-436; Pope v. Railway, 242 Mo. 236-239. (3) No recovery can be had under the humanitarian doctrine on plaintiff's own testimony, as he testified he was approaching the crossing slowly and speeded up when near the track. Under this state of facts, the engineer and fireman would be warranted in thinking he intended to stop for the crossing. Alexander v. Railway, 233 S. W. 44-49; King v. Railroad, 211 Mo. 1; McGee v. Railroad, 214 Mo. 530; Burge v. Railway, 244 Mo. 76.

*Owen & Davis, Norman A. Cox* and *Hugh Dabbs* for respondent.

The court properly submitted the case to the jury on the last chance doctrine. Milward v. Railway Co., 232 S. W. 228; Ellis v. Railway Co., 234 Mo. 657; McGinnis v. Railroad Co., 268 Mo. 677; Tavis v. Busch, 280 Mo. 283; Holmes v. Railway Co., 207 Mo. 149; Sandry v. Hines, 226 S. W. 646.

FARRINGTON, J.—This case was first assigned to Cox, P. J., and he has prepared a statement of the case and an opinion disposing of the question of whether the plaintiff was guilty of contributory negligence as a matter of law. There is division, however, on the question of whether plaintiff made a case to go to the jury on the humanitarian doctrine. We have adopted that portion of the opinion prepared by Cox, P. J., which disposes of the contributory negligence feature; it is as follows:

I. "Action for damages for the death of the wife of plaintiff caused by a train of the St. Louis-San Francisco Railway Company striking an automobile at a public highway crossing. Judgment for plaintiff for $5000 and defendant appealed."

On February 23, 1920, plaintiff with his wife and baby were traveling in an automobile which plaintiff was driving from Joplin to Carl Junction. At a crossing of a public highway the automobile was struck by the engine of a train consisting of an engine and caboose. The automobile was demolished, the occupants thrown out and plaintiff's wife was so badly injured that she died in a few days afterward.

Plaintiff's evidence was to the effect that he was driving his automobile west on the public road. That the train which struck him was going south at the crossing and the track of the railroad and the train could not be seen by plaintiff as he approached the crossing until he was in about 200 feet of the crossing and the train came around a curve and a hill and was 250 feet to 300 feet from the crossing. That as plaintiff approached the crossing he and his wife were watching and listening for the train and talked about a former accident at this same crossing. That when he reached a point about fifty feet from the crossing, he had slowed down to about three or four miles per hour and he looked both ways and listened and saw or heard no train and heard no whistle or bell at any time. Plaintiff first looked north just after he passed inside of the right of way fence which was about fifty feet from the track and saw and heard no train, then looked south as he passed along and saw no train in that direction and about this time he reached a point within twenty-five feet of the track and attempted to shift his gear but it did not work just right but he finally got it adjusted and then increased his speed and went on and about that time, he then being in twelve to fifteen feet of the track, his wife saw the train and said, "there is the train." Plaintiff then looked and saw the train almost on him and heard a whistle and the automobile was

struck immediately thereafter and he remembered nothing further. The automobile had almost cleared the track and was struck near the rear end. There were other witnesses who testified that the whistle was not sounded nor the bell rung as the train approached the crossing and that the train was running at a fast rate. The evidence on the part of the defendant tended to prove that the whistle was sounded at the proper places and the bell rung as the law requires. The engineer testified that his outlook was on the right or west side of the engine, and on account of the curve he could not see the rails at the crossing until close to it. The position of the fireman was on the left or east side and he had a clear view of the crossing after they came out of the cut which the evidence for the defense places at 400 feet from the crossing. He testified that he first saw plaintiff when he was 100 to 150 feet east of and approaching the crossing. That plaintiff was driving about twenty miles per hour and did not slacken his speed. That he formed the impression that plaintiff was not intending to stop when he was seventy-five to 100 feet east of the crossing and that he was then running about twenty miles per hour and the train was about one hundred feet from the crossing and running twenty-five miles per hour. That he told the engineer to stop and that the engineer applied the brakes immediately.

A demurrer to the evidence was filed by defendant at the close of plaintiff's case and at the close of all the testimony. These were overruled.

Appellant contends that the evidence shows that plaintiff was guilty of contributory negligence as a matter of law, and hence the case should not have gone to the jury on the theory of negligence on the part of defendant and due care on the part of plaintiff. There can be no question as to the law which requires a person approaching a railroad crossing to both look and listen and use ordinary care to discover and avoid collision with a train. It is not always easy, however, for a court to say just what conduct on the part of a plain-

tiff in a suit will amount to proper care on his part. The standard by which to judge his conduct is that of an ordinarily prudent person under the same or similar circumstances. A plaintiff should be bound by his own testimony as to the facts upon which the question of his contributory negligence, as a matter of law, is to be determined. The plaintiff in this case testified that he could see the train when he was 200 feet from the track and the train was 250 to 300 feet from the crossing. That he did not see the train on the day of this accident until he was almost on the track and the train was then right on him. That he was running about four miles per hour when he reached the right of way of the railroad about fifty feet from the track. That he then looked north and saw or heard no train. He then looked south where he had a clear view of the track for a long distance and saw no train. He did not look north any more. After looking south he was then in about twenty-five feet of the track and began to shift his gear and when he got it shifted he was then in twelve to fifteen feet of the track and his wife then saw and notified him that the train was there. He then looked and saw the train and, as he expressed it, the train was right on him and he remembered no more.

The presence of a railroad track is in and of itself a warning of danger and a person approaching such crossing must look and listen for trains until he is past the danger point regardless of whether the bell is rung or the whistle sounded. If plaintiff had looked to the north at the time he found it necessary to shift his gear, when he was twenty-five feet from the track, he would undoubtedly have seen the train at that time and could have stopped his car and have avoided the collision. Our conclusion is that on plaintiff's own testimony, by which he is bound, he was guilty of contributory negligence as a matter of law and the trial court should have so held. The error in that particular will necessitate the reversal of this judgment.''

II.  Appellant contends that the plaintiff failed to make a case under the humanitarian doctrine, and we will now turn our attention to that.

Bearing on this question the admitted or uncontroverted facts in this case are that plaintiff was driving west approaching this railroad crossing with his wife in a Maxwell car, in February, with the curtains up on the right hand or north side.  The plaintiff was driving and seated on the left or south side of the front seat of the automobile.  The road was a chat road and the crossing over the railroad was in good condition.  There could be but one way that the, operators of defendant's train, consisting of an engine, tender and caboose, coming from the north, could determine what the operator of plaintiff's automobile was going to do as he came to the crossing, and that was by watching the action of the automobile; the operators of the train being unable to see the occupants of the automobile.  The right-hand side of the engine struck the righthand rear wheel of the automobile as it was passing over the track.  The testimony is that had plaintiff's car gotten about a foot farther it would have missed it.  All of the testimony shows that the engine which struck this car was traveling about twenty-five miles an hour within 100 to seventy-five feet of the crossing.

Turning now to plaintiff's evidence.  He testified that on the day of the accident he and his wife were traveling west on this road approaching the intersection of defendant's railroad, passed around a wagon which was also traveling west about 225 to 300 feet east of the railroad track.  That the speed his automobile was traveling at that time and point was fifteen to twenty miles an hour, and that almost immediately after passing around this wagon he began to decrease the speed of his car until it reached within fifty feet of the railroad track, or the point even with defendant's east right of way fence, until the car at that point was traveling at a speed of about five miles an hour, and from that point on to a point about twenty-five feet from the track the speed

of the car was decreased to three or four miles an hour; and having reached the last point, twenty-five feet from the railroad track, the speed was so slow, the car still being geared in high, that it was about to stop and that he threw it into second, or intermediate, and gave his car gas and speeded it up on the track and was struck just as he was going over. The uncontradicted testimony shows that the view to the north at a point fifty feet east of the tracks the railroad was clear back to a hill around which defendant's track came from the northeast. There is some little difference as to how far back the train could be seen in point of feet but all agree that it could be seen to this hill. A number of plaintiff's witnesses and all of defendant's witnesses, some of whom measured it, stated that an engine could be seen from 400 to 450 feet from the point in the chat road fifty feet east of the crossing. The plaintiff testified that it could be seen to the point of the hill, but he thought the distance was 250 to 300 feet, but admitted on cross-examination that it might be 400 feet, and he had not measured it.

It is admitted that as soon as the engine came around the point of the hill the defendant's fireman could have seen plaintiff's car coming west down the road toward this crossing had he looked in that direction.

There is much controversy concerning the speed that the plaintiff was traveling in his automobile. The fireman, who admitted he saw the automobile before it got to the crossing, says when he first saw it, it was running about twenty miles an hour and that it never slackened its speed until the collision occurred. The man in the wagon, around whom plaintiff passed east of the track, corroborated the fireman's testimony in this as to the speed of the automobile, and further says that as plaintiff passed around him he knew that the train was coming and that he threw up his hands and hollowed the train was coming. The plaintiff testified he did not see this gesture or hear any warning from the traveler in the wagon which, as heretofore stated, plaintiff stated was at a point some 225 to 300 feet east of the crossing. The

fireman testified that when he first saw this automobile it was from 100 to 150 feet east of the crossing, passing this wagon in the road, and that he realized when his engine got within 100 feet, and that when the automobile was within seventy-five to 100 feet of the crossing, that plaintiff was not going to stop, and that on realizing this he signaled to the engineer to stop and that from that point on the brakes were thrown on, alarm signals given and all that was possible done to avoid the collision. He is corroborated in this by the engineer. Both testified that this train which, as stated, consisted of an engine, tender and caboose, could be stopped within 200 feet. The engineer stated he could do this if he reversed his engine, and stated that after the collision he could have stopped the train a little sooner by reversing the engine but the collision had taken place and he did not take a chance of turning his engine over by reversing it. The injury at that time, of course, had already occurred. The testimony is that the train was actually stopped something like 125 to 150 feet south of the crossing after the collision.

The conductor's testimony, who was in the cupola of the caboose, practically corroborated the testimony of the fireman and engineer on material facts sworn to by them. The fireman and plaintiff disagreed as to the distance the plaintiff passed around the wagon east of the road, plaintiff putting it from 225 to 300 feet and the fireman putting it at about 100 or 150 feet, but added that his testimony was largely a guess in estimating the distance.

As we view this case, there could be no recovery under the humanitarian rule, taking either plaintiff's testimony or defendant's to be true. And, when we speak of defendant's testimony, it is largely that of the fireman, who was the eye witness to the accident, he being on the inside of the curve and on the same side from which plaintiff was approaching the track. It is admitted that the engineer could not have seen owing to

the position of the engine to the crossing and the curve in the railroad.

Analyzing plaintiff's testimony, we find a man driving an automobile, enclosed by curtains, approaching a railroad track from the east upon which there is coming a train from the north. After reaching a point from 225 to 300 feet east of the track he began to slow his car down to a speed of five miles an hour when it reached the right of way fence fifty feet from the track, from which point under plaintiff's testimony it is certain that the train was then in sight, for at the rate of speed the train was traveling it could not have been yet behind the hill, and there were no obstructions to the north from this point. The train was there to be seen by the plaintiff, and whether he actually saw it or not is of no consequence on the question under discussion. The automobile was there, to be seen by the fireman, and the only possible way that he could determine whether the plaintiff was going into a place of danger, or was about to go into the danger zone, oblivious to the peril made by the oncoming train, was to watch the action of the automobile. From the right of way fence it decreased its speed for the next twenty-five feet as it approached this track to from three to four miles an hour, so slow that the plaintiff had to change the speed of the car to keep it from stopping, and then the fireman would see the car start forward, speeded it up, as plaintiff said, on the track. The plaintiff said this point, when he began to speed up, was between fifteen and twenty-five feet of the track. Now, had it continued at its speed of from three to four miles an hour, from a point twenty-five to fifteen feet from the railroad track, the defendant's engine could not then have been over 100 to 150 feet from the crossing. The fireman testified that it was about 100 feet when he saw that the plaintiff was getting into danger, and the speed of the train would carry it over thirty-six feet every second.

It could not be concluded from this evidence that anything could have been done that was not done to avoid

this collision, if plaintiff's own testimony is to be believed. For he says that at a point from twenty-five to fifteen feet of the railroad track he could have stopped immediately had he known the train was coming. His testimony shows that he was at a place of safety where the operators of the train had a right to believe he had seen the train, it being in plain view and his duty to see it. The only conclusion that could be reasonably drawn by the train operators from viewing the action of the automobile, as such action was described by the plaintiff, was that the operator thereof had seen the train and was slowing down to stop and let the train pass by. The train and the automobile were so close together, evidenced by the collision which immediately followed, that nothing could be done to save the collision after the automobile was suddenly given gas and speeded up on the railroad track. The testimony shows that one foot more would have avoided this collision, but to place liability and negligence on that amount of space is dealing with the fractional part of a second.

Plaintiff's evidence, if it is true, precludes a recovery. But, it is argued that plaintiff is entitled to the benefit of defendant's evidence if it helps him to make out a case. Ordinarily that is true; but the writer of this opinion is of the belief that it has never been held in Missouri, and never should be held to be the law, that where plaintiff goes on the stand, under oath, and testifies to a given state of facts which are material to a recovery that he then cannot turn to the court and to the jury and say I am entitled to a verdict under the defendant's testimony although perchance that testimony actually contradicts what I have testified were the facts of the case.

If the plaintiff in his pleading makes an admission or statement of his case, he is bound by it, and the courts have in numerous opinions held that he will not be permitted to deny that which he has put in a solemn pleading. His pleading is not a statement made under oath. It would seem, therefore, that there would be as much

or more reason to deny that plaintiff be allowed to rely on defendant's testimony rather than his own for recovery, where defendant's testimony flatly contradicts his on a material point or issue in the case. And, in order for the plaintiff to recover in this case he must turn to the fireman and hold the defendant for the fireman's statement that he realized when plaintiff was seventy-five or 100 feet from the crossing that plaintiff was going to go into the danger zone, and then say the fireman is not telling the truth when he says that he first realized plaintiff was not going to stop when his engine was 100 feet from the crossing. If plaintiff be allowed to rely on witness Friend's testimony that when the train was 200 feet from the crossing the plaintiff's car at that time was at the fifty foot right of way fence, he must then be permitted to say that Friend is not to be believed as to the rate of speed which plaintiff was traveling, which he placed at twenty miles an hour, and did not slacken until the collision occurred. If Friend's testimony was correct as to the position of the train, that is 200 feet from the crossing when the car was fifty feet from the crossing, and correct as to the speed of the car, the automobile would have necessarily passed beyond the tracks long before the train reached there.

If the fireman saw plaintiff's car when he was where Friend says it was and the train was 200 feet from the crossing, then whom was the jury to believe as to the speed of plaintiff's car? Plaintiff testified that it was running from the fifty foot point to the place where he gave it gas and speeded it up at three or four miles per hour. If his version as to speed is true, then the action of the car did not denote one obliviously going into a place of danger. If the fireman and Friend are to be believed as to the speed of plaintiff's car, then plaintiff must be disbelieved for he would have crossed long before the engine could have traveled the 200 feet. This merely goes to show that by attempting to piece-meal the case by taking certain statements of defendant's witnesses which are contradictory of statements made by

plaintiff, necessarily leads to a conclusion that controverts the physical facts which are admitted in the case.

To recover on the humanitarian doctrine requires that the evidence show with some degree of certainty that the engine and the automobile occupied positions and were running at certain speeds before the collision occurred, and that such positions and speed would have led a reasonable prudent man on the engine to conclude that there was likelihood of a collision. As I read the evidence in this record, to fix this at any given place is to do so purely upon conjecture.

We have no doubt that plaintiff's version of this sad affair would, resting alone, describe a condition that would fail to show to the operators of this engine that he, the plaintiff, was obliviously in, or going into a dangerous position oblivious to his peril. We are also equally confident that when he turns to defendant's evidence and undertakes to pick statements made by witnesses to find that the defendant can be held on the humanitarian doctrine results in a finding that conflicts with the physical facts, taking the distance given by various witnesses and the speed described of the two instrumentalities coming together. But, above all, we are of the opinion that when the plaintiff's testimony described a state of facts which denies a recovery under the humanitarian doctrine, he cannot then turn to the defendant's testimony, which contradicts his testimony, and undertake to build a case upon that.

It is held in the case of Behan v. Transit Co., 186 Mo. 441, 85 S. W. 346: ''Whilst it is true that a plaintiff's case is sometimes made out, or aided, by the defendant's evidence and also that a jury may believe part of a witness's testimony and disbelieve another part, yet before the plaintiff in this case can avail himself of the defendant's testimony to the effect that the deceased was attempting to leave the car while it was moving, he will have to confess that all of the evidence adduced in his behalf was untrue and that the statement in his petition that the car had stopped and was standing still, when the attempt to alight was made, was also untrue, and that

only that part of the defendant's testimony that suited the plaintiff's case was worthy of belief." "A party will not be allowed to take such a position." This same language is quoted, with approval, in the case of Graefe v. Transit Co., 224 Mo. 264, 123 S. W. 835; in the case of Steele v. Railroad Co., 265 Mo. 97, 175 S. W. 177, a full discussion of the law on the question of plaintiff being bound by admissions will be found. In that case the plaintiff was denied a recovery where one day a plaintiff in a case testified to a state of facts which put him out of court, and on the next day testified to a statement of facts contradictory to the first day's testimony which would have permitted him to go to the jury, and the court in discussing the question held that in the absence of some lawful, legal excuse or explanation a plaintiff cannot rely on making his case where his own testimony originally put him out of court. So in the case at bar we say that plaintiff having testified in two trials on the action of his automobile in approaching this railroad track, describing the speed at which it approached it and describing what he did in shifting the gears on approaching it, will certainly be held to that statement of facts in determining whether or not he is entitled to a recovery, and should not be permitted to pick up some other testimony introduced into the case and adopt it without an excuse or explanation as to why it conflicts with or contradicts his testimony, and insist that although you may find that I have not correctly described the facts of this case yet under the testimony of these other witnesses of defendant which describes the situation in a conflicting way with me, I am entitled to recover.

We find in the case of Tannehill v. Kansas City, C. & S. R. Co., 279 Mo. 172, 173, 213 S. W. 818, where the court denied a recovery under the humanitarian doctrine because the only eye witness, and principal witness for plaintiff, testified to a state of facts that show the automobile in that case could not have been seen more than 200 feet from the crossing, although in the same case, as the opinion shows, the plaintiff had testimony

of other witnesses who swore that the train was in fact visible at a much greater distance than 200 feet on the day of the accident.

It has been held in a number of cases that before there can be a recovery under the humanitarian doctrine there must be some evidence showing that a reasonably prudent man would have discovered that the injured party was going into a place of danger oblivious to the peril into which he was entering. And surely it could not be held that the operators of engines must cast their eyes up and down the roads over which their engine is going to cross and conclude because they see some automobile coming down the road toward the crossing that the party in charge of the automobile will probably go in front of the train and by doing so violate the first law of nature, which is self-preservation. The plaintiff in this case admitted that he was familiar with this crossing, having passed over it within the last year two or three times a week. It is a most unfortunate affair, but we are unwilling to hold that the plaintiff has made a case such as would permit ordinary men to find that the evidence showed that the plaintiff was seen or could have been seen going into a position of danger, oblivious to his peril, in time to have allowed the operators of this train, with the means at hand to have avoided the injury. This we understand to be the rule upon which recovery must be had. The judgment is reversed. *Bradley, J.,* concurs. *Cox, P. J.;* dissents in separate opinion and certifies to Supreme Court.

COX, P. J. (dissenting).—I cannot agree with my brethern that a case for the jury was not made under the humanitarian rule. I agree with the statement in the majority opinion that a plaintiff cannot rely upon testimony produced by the defendant to make his case when such testimony contradicts the allegations of his petition and his own testimony as was the case in Behen v. Transit Co., 186 Mo. 441. 85 S. W. 346, and Graefe v. Transit Co., 224 Mo. 264, 123 S. W. 835, cited by my associates. It may be noted here that those cases also

recognize the generally accepted rule that a plaintiff's case may be made out or aided by evidence produced by the defendant and also that a jury may believe a part of the testimony of a witness and disbelieve another part. The case of Steele v. Railroad, 265 Mo. 97, 175 S. W. 177, as I read it, turned on the fact that plaintiff had so contradicted himself in his own testimony by testifying to one state of facts on one day and to another state of facts the next day, both of which could not be true, that the court held, as a matter of law, that his testimony had no probative force and with his testimony eliminated no case was made. See pages 117 and 118. In the case of Tannehill v. Railroad, 279 Mo. 158, 213 S. W. 818, there was no evidence to show at what point the engineer should have discovered that the automobile would not stop, which clearly distinguishes that case from this one, for here the fireman testified directly that he discovered that plaintiff would not stop when he was seventy-five to one hundred feet from the track.

The majority opinion in this case reasons from the testimony of each witness separately and concludes that no witness, alone, makes a case under the humanitarian rule and that we cannot say that on the whole testimony a case is made because if we try to put together the testimony of plaintiff and that of either Mr. Friend or the fireman there will be such a conflict that no case is made. In that I think they take away from the jury one prerogative that all courts allows, which is, that the jury, and not the court, are the triers of the facts and must weigh the testimony of each witness. I think the majority opinion, in effect, denies the right of the jury to believe part and disbelieve part of the testimony of a witness. It is said that if we take as true plaintiff's testimony as to the speed and conduct of the automobile, then those in charge of the engine would have the right to infer that the driver of the automobile saw the engine and intended to stop and they would not be impressed differently until the automobile began to increase its speed and that the collision could not have

been averted after that time.    I think this latter con-
clusion erroneous.    If the court should hold plaintiff to
his testimony that his speed was three to four miles per
hour when he was fifteen feet from the track and be-
gan to increase his speed, then we must allow the jury
to hold the defendant to the same fact.    Now if we keep
in mind that plaintiff also testified that from that point
it was a little up grade to the track and that he did not
increase his speed much, and also that he testified that
from his place in the seat of the automobile to the front
of the machine was six or eight feet, which would make
the length of the machine at least twelve to fifteen feet,
and we then allow four feet for the width of the track,
and keep in mind that the automobile got across the
track and only lacked one foot of getting out of the way
of the engine, it will appear that the automobile traveled
at least thirty-two feet after the fireman, who was the
only person on the engine that could see the automobile,
was required by the appearance of the movements of the
automobile to take notice that the automobile did not in-
tend to stop.    If the train was running twenty-five miles
per hour as the evidence shows, then while the automo-
bile was running thirty-two feet at the rate of five miles
per hour the train would run 160 feet.    If the jury
found these facts to be true, as well they might, then
a case sufficient to go to  the jury was made under the
humanitarian rule without the testimony of either Mr.
Friend or the fireman.    The engineer testified that he
was seventy-five to 100 feet from the crossing when the
fireman notified him to stop.    That as it was he slack-
ened some before hitting the car.    Now if the fireman
had not testified at all and the jury had found that he
discovered that plaintiff was not going to stop when he
was fifteen feet from the track, and had also found, as
well they might, that the train was at that time 160 feet
from the crossing, they would also have been warranted
in finding that the fireman allowed the engineer to pass
sixty feet nearer the crossing after he discovered plain-
tiff's peril before he notified the engineer to stop while
if he had given the signal promptly when he first dis-

covered plaintiff's peril the speed of the engine could and would have been slackened sufficiently to have allowed the automobile to escape and the collision would not have occurred. I do not think, however, that any witness, whether a party to the suit or not, should be held to exact figures when testifying to the speed of an automobile at a given time. Testimony of that kind is necessarily a matter of opinion. The plaintiff may have placed his speed too low and the other witnesses may have placed it too high. Mr. Friend may very easily have been mistaken in his estimate of the speed of the automobile as it passed from the right of way fence to the track because he was viewing it from the rear at a distance of 100 to 150 feet. He was in a much better position to judge of the distance from the train to the crossing when the plaintiff was at the right of way fence than to judge of the speed of the automobile. He testified that when plaintiff was about at the fence the train was between 200 and 300 feet from the crossing. If we take that as approximately correct then the average speed of the automobile from the fence to the track would be six miles or less per hour. I do not regard this a material contradiction of plaintiff or as a contradiction at all, for both were giving an opinion on a matter about which neither could be exact.

The fireman testified that he concluded that plaintiff did not intend to stop when he was seventy-five to 100 feet east of the crossing. To my mind that destroys the inference reached in the majority opinion that the fireman, for he was the only person on the engine that could see the automobile, did not know that plaintiff did not intend to stop until he was in fifteen feet of the track. I see no reason why the jury might not have found from the testimony of Mr. Friend and the fireman that the fireman knew when the plaintiff was at the right of way fence fifty feet from the track that he did not intend to stop and that the engine was then at least 200 feet from the crossing. If the jury did believe that state of facts then there can be no question that a case for the jury was

made under the humanitarian rule for the engineer testified that the engine was in seventy-five to 100 feet of the crossing when he received the notice. from the fireman to stop and if that were true, then the fireman allowed him to move 100 feet after he knew plaintiff did not intend to stop before he gave the engineer notice to stop. If the fireman had given the notice to stop when the engine was anywhere between 100 and 200 feet from the crossing, there can be no question but that the collision would have been avoided.

Mr. Friend and the fireman, both witnesses for the defendant, do not agree except as to the testimony that the plaintiff was going fifteen to twenty miles per hour and did not slacken his speed, but shall we say for that reason that the jury could not believe anything that either said? I understand a correct statement of the rule sought to be applied in this case to be, that plaintiff cannot be allowed to rely upon testimony produced by the defendant to make a case for him when to do so will necessarily falsify his own testimony. That is what I understand was held in the case of Behen v. Transit Co., supra, and which has been consistently followed since. As I view the testimony in this case the plaintiff may profit by the testimony of both Mr. Friend and the fireman without violating that rule. I think the plaintiff could profit by part of the testimony of the witnesses for the defense without being required to take as true the entire testimony of the same witnesses. I think the jury could have found from the testimony of the fireman that he discovered that plaintiff did not intend to stop when he was at or east of the right of way fence without being required to find that the same witness was correct in his judgment that plaintiff was then traveling fifteen to twenty miles per hour, or that the engine was then within 100 feet of the crossing. I also think that the jury could have found from the testimony of Mr. Friend that when plaintiff was at the right of way fence, fifty feet from the crossing, the engine was at least 200 feet from the crossing without being also compelled to

find that plaintiff did not slacken his speed after he passed Mr. Friend in the road 250 to 300 feet east of the crossing. I also think that these facts could have been found without also finding that plaintiff's testimony as to the speed of his automobile was false. As already said, testimony as to the speed of the automobile is only a matter of opinion. If Mr. Friend is right in placing plaintiff at the fence fifty feet from the track when the engine was at least 200 feet from the crossing, then plaintiff's average speed from the fence to the track was about six miles per hour. I cannot see that this makes such a striking contradiction as will justify a court in holding that plaintiff cannot profit by Mr. Friend's testimony because to permit him to do so is to concede that his own testimony is false.

As I understand the majority opinion it holds that plaintiff cannot take any of the testimony of the fireman to aid his case without taking it all. I think this holding erroneous and in direct conflict with the rule that the jury may believe part of the testimony of a witness and disbelieve another part. This rule is recognized in the cases cited by the majority and is well stated in Campbell v. St. Louis & Sub. Ry. Co., 175 Mo. 161, l. c. 180, 75 S. W. 86. It is there said "The motorman testified that the headlight was burning and that it threw the stream of light down the track on which he was moving and enabled him to see the wagon on the north track. He also said that as soon as he saw the wagon he thew on the brake and reversed the motor but that it failed to take effect. If that testimony is true, then he was not guilty of violating the ordinance for he did all that he could do in the emergency. But the jury were the judges of the weight to be given his testimony; *if they credited part of his testimony and discredited part, they were acting within their province.* (The italics are mine.) So say I in this case. If the jury credited that part of the fireman's testimony in which he said that he discovered that plaintiff did not intend to stop when he was seventy-five to 100 feet east of the track and discredited

his testimony to the effect that the engine was then within 100 feet of the crossing, and should also believe that Mr. Friend was correct in locating the engine at least 200 feet from the crossing when the automobile was at the right of way fence fifty feet from the crossing, they were acting within their province.

I am of the opinion that the majority opinion in this case on the question of the application of the humanitarian doctrine violated the rule that a jury may believe a part of the testimony of a witness and disbelieve another part and is in conflict with the decision of the Supreme Court in the case of Campbell v. St. Louis & Sub. Ry. Co., 175 Mo. 161, 75 S. W. 86, and for that reason I ask that this case be certified to the Supreme Court for final determination.